383 So.2d 1134 (1980)
Delores A. HEGLER, Appellant,
v.
William F. HEGLER, Appellee.
No. 78-2082/T4-220.
District Court of Appeal of Florida, Fifth District.
May 21, 1980.
*1135 H. Jay Stevens, Orlando, for appellant.
R. Patrick Phillips, Orlando, for appellee.
SHARP, Judge.
Delores A. Hegler appeals the final order entered by the lower court modifying the final judgment of dissolution by changing the permanent custody of the two minor children from herself to the children's father. She argues that the lower court lacked jurisdiction to modify the judgment. We agree, and reverse the lower court's order in its entirety as to the son, Robert Earl Hegler; and as to the daughter, Lisa Delores Hegler, we remand this matter to the lower court for the purposes of determining whether or not it had jurisdiction under the Uniform Child Custody Jurisdiction Act to enter the order modifying custody of this child at the time the petition was filed.
The Heglers' marriage was dissolved in 1973, by a final judgment entered by the Circuit Court in Orange County, Florida. The wife was given the permanent custody of the two minor children, subject to the father's reasonable rights of visitation. The judgment required the father to pay child support; and it contained no prohibition against the wife removing the children from Florida. In December of 1976, the appellant moved to Maryland with the two children. They resided there until July, 1978. On July 25, 1978, the appellant sent Lisa across the street to the grocery store. The appellee telephoned the appellant from the store to say he was taking custody of Lisa, and against the appellant's wishes, he returned with Lisa to Florida.
Appellant filed a petition in Florida asking the court to hold appellee in contempt for taking custody of Lisa and for failure to pay arrearages of $6,845.00 in child support. The appellee filed verified pleadings claiming financial inability to pay the child support, and a denial of visitation rights with the children by the appellant. He also filed a petition to modify the custody of both children, alleging the appellant was not a fit and proper person to have custody; that he took custody of Lisa at the request of Lisa and the appellant's boyfriend; that the appellant's home was "unhealthy" because the mother was living with her boyfriend in an unmarried state; that the mother's friends indulged in drinking alcohol to excess and in smoking marijuana in the presence of the children; and that the appellant left the children unattended "for considerable periods of time," and did not devote full time and care to them. The husband also filed the affidavit required by Section 61.132, which showed the children resided with *1136 the mother in Maryland from 1976 to 1978, and that the son was still in Maryland. The appellant denied the substantive grounds for modification and filed an affirmative defense challenging the jurisdiction of the Florida court to modify the custody award. Appellant alleged that the children had been residing in another state for more than 6 months prior to commencement of the modification proceedings and Lisa was wrongfully taken by appellee to Florida.
The lower court found appellee in contempt for failure to pay the $6,845.00 child support, but in a subsequent order dated August 31, 1978 it ruled it had jurisdiction to determine the petition for modification. The court stated it had jurisdiction because it was the court of "original jurisdiction" in this cause. After a hearing it changed the permanent custody of the children from the appellant to appellee because it found that the appellant was living with her boyfriend out of wedlock; the children were "unruly and in need of a better environment"; and the appellant's friends used alcohol and marijuana to excess in her home. At the time of the final hearing both children were present in Florida because the court ordered appellant to present both children at the final hearing.
Florida adopted the Uniform Child Custody Jurisdiction Act effective October 1, 1977. It supersedes prior law in Florida which established the rule relied on by the trial judge in this case as the basis for jurisdiction.[1] The Uniform Act is designed to give only one state jurisdiction to determine custody, unless exceptional circumstances exist. The intent is to avoid interstate competition and conflict and to discourage parental child-snatching such as occurred in this case.[2]
The general rule is that the "home state" of the child should be the jurisdiction to hear and determine custody matters. Section 61.1308, Fla. Stat. (1977), provides:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or
2. Had been the child's home state within 6 months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
The term "home state" is defined as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent for at least 6 consecutive months ..." § 61.1306(5), Fla. Stat. (1977). Clearly the "home state" for Lisa and Robert was Maryland at the time the petition to modify was filed in Florida. The fact that the original decree was entered in Florida does not prevent loss of jurisdiction if the children have resided elsewhere for 6 months. Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979).
If Florida is not the "home state," then exceptional circumstances must be alleged and proved to establish a basis for subject matter jurisdiction. Subsection (b) of § 61.1308(1) provides for jurisdiction if it is in the best interest of the child, and if:
1. The child and his parents, of the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's *1137 present or future care, protection, training, and personal relationships.[3]
No allegations of the appellee's pleadings indicate any basis for jurisdiction under this provision. The basis for the modification was the unfavorable circumstances of the Maryland home  a matter which could be much more appropriately addressed in Maryland. § 61.1316(1); § 61.1304(3). Matteson v. Matteson, 379 So.2d 677 (Fla. 2d DCA 1980).
Under subsections (c) and (d) of § 61.1308, Florida may take subject matter jurisdiction, even if it is not the home state, if:
(c) The child is physically present in this state and:
1. The child has been abandoned, or
2. It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d) 1. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child ...[4]
There was no basis for jurisdiction under (d). Maryland was the "home state" and would have heard the modification petition.[5] Subsection (c) could possibly apply to Lisa because she was present in Florida when the petition to modify was filed, and the allegations might be read as claiming an emergency caused by neglect. See Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1979). But Robert was not present in Florida at the time the petition was filed, and thus subsection (c) could not apply to him under any circumstances.
We reverse the order of the trial court concerning Robert in its entirety because of lack of subject matter jurisdiction, and direct that his custody be forthwith returned to the appellant. Child support for this child shall be paid pursuant to the prior judgment and the trial court shall reinstate payment of the arrearages for Robert, in a manner it determines is equitable to the parties. With regard to Lisa, we remand this matter to the lower court for a hearing and determination of jurisdiction under § 61.1308(1)(c). The fact that the children have been in Florida since 1978 and that Florida may now have become their "home state" pending the lengthy resolution of this appeal shall not be considered by the trial court in determining jurisdiction of Lisa or Robert, as regards this or any future petition.[6]
REVERSED and REMANDED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] Smith v. Smith (Fla. 2d DCA 1980) (Case No. 78-1906. Opinion filed March 26, 1980); Elliott v. Weyman, 337 So.2d 832 (Fla. 1st DCA 1976); Ward v. Wells, 298 So.2d 493 (Fla. 1st DCA 1974). "Decrees pertaining to the welfare of the children are, in a sense, interlocutory and because of this they may be modified, from time to time, as the welfare of the children requires." Butler v. Butler, 132 So.2d 437 (Fla. 3d DCA 1961).
[2] § 61.1304(1) and (5), Fla. Stat. (1977). See also: § 61.1308 Fla. Stat. (1977).
[3] § 61.1308(1)(b), Fla. Stat. (1977).
[4] § 61.1308(1)(c), Fla. Stat. (1977).
[5] Code 1957 Art. 16, § 184 to 207. Maryland adopted the Uniform Act in 1957.
[6] "The reversal of a judgment restores the parties to the condition in which they stood before it was rendered." 2B Southern Digest, Appeal & Error, § 1180(1) (1971). See also: Chitty & Co. v. Granthum, 1 So.2d 725 (Fla. 1941); Jackson Securities & Investment Co. v. A. Paul Goodall Real Estate & Insurance Co., 28 Ala. App. 339, 184 So.2d 344 (1938). Moreover § 61.1308(1)(a) 1 and 2 (supra) specifically refer to "commencement of the proceeding" as the controlling time for determination of jurisdiction.