433 So.2d 1015 (1983)
Ronald L. NELSON, Appellant,
v.
Donna G. NELSON, Appellee.
No. 82-2596.
District Court of Appeal of Florida, Third District.
June 14, 1983.
Rehearing Denied July 22, 1983.
*1016 Paul R. Lipton, North Miami Beach, for appellant.
A.N. Spence, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The appellee-mother petitioned the Circuit Court of Dade County, Florida, to change the permanent custody of her children from the father to her. She attempted to invoke the trial court's jurisdiction solely under a provision of Florida's Uniform Child Custody Jurisdiction Act, Section 61.1308(1)(c)2, Florida Statutes (1981), the requirements of which are that the subject child be physically present in this state, and "[i]t is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected."[1] Her petition for change of custody alleged that the children are visiting with her in Dade County, Florida, and "are being mistreated and abused by their present stepmother." Her amended petition embellished upon this charge, asserting that the children "have been subjected to cruel and inhuman punishment by their present stepmother" and that one of the children stated that he "would rather die than go back to New York to live with his present stepmother." Upon these allegations, the trial court assumed jurisdiction and granted the appellant temporary custody pending a full hearing in the Florida court on appellee's petition for change of permanent custody. The father appeals, and we reverse upon a holding that the allegations of the mother's petition are insufficient to invoke the jurisdiction of a Florida court to change the permanent custody of the children.
Section 61.1308(1)(c)2 is designed to vest jurisdiction in courts of this state for emergencies only. Thus, if a child is alleged to be physically present in this state in the company of the alleged mistreater or abuser, a Florida court would be free to conclude, upon proof of these allegations, that an emergency exists and would have jurisdiction over the petition for change of custody. But where, as here, petitioner's allegations of mistreatment and abuse of the children at the hands of the stepmother in New York, although couched in the present tense, definitively show that the alleged mistreatment and abuse are not occurring at the time of the filing of the petition, but rather are simply capable of resuming upon the children's return to New York, an emergency sufficient for jurisdiction to change permanent custody does not exist.
We acknowledge that in Hegler v. Hegler, 383 So.2d 1134 (Fla. 5th DCA 1980), and Moser v. Davis, 364 So.2d 521 (Fla. 2d DCA 1978), our sister courts have, without discussion of this distinction, found jurisdiction to exist under Section 61.1308(1)(c)2, under circumstances similar to the present *1017 case. We decline to follow these holdings because we believe they extend the jurisdiction of courts of this state beyond that intended by the Legislature.[2]
We concede that it is arguable that the language of Section 61.1308(1)(c)2 is susceptible to the construction that even though alleged prior abuse and mistreatment have been interrupted by the non-custodial parent gaining physical custody of the child, the threat of resumption of such conduct when the child is returned to the custodial parent in the domicile state of the child creates emergency jurisdiction. We believe, however, that the use of the past tense in the statute, "[the child] has been subjected to or threatened with mistreatment or abuse," contemplates that such mistreatment and abuse have occurred and are capable of immediately recurring in Florida. We thus agree with the construction placed on an identical emergency provision by the Louisiana Supreme Court in Dillon v. Medellin, 409 So.2d 570, 575 (La. 1982):
"We construe this emergency provision as permitting a state, otherwise without jurisdiction over a visiting child or her non-resident mother, to take jurisdiction in a custody matter only if the immediate needs of the child require it because the child has been abandoned or otherwise mistreated, abused, or neglected. The statute contemplates that conditions in the asylum state and the immediacy of those conditions will provide both the necessity and the justification for the asylum state's assuming jurisdiction over a custody matter not otherwise within its province... . We do not construe La. R.S. 13:1702(A)(3) to mean that a child visiting an asylum state may be found to be in an emergency state of mistreatment, abuse, neglect or dependency because of allegations concerning conditions purportedly existing in the home state, conditions more appropriately and conveniently subject to the scrutiny of the courts of the domicile state." (footnote omitted) (emphasis in original).
Thus, emergency jurisdiction sufficient to effect a change of permanent custody is confined to those situations in which a person other than the non-custodial parent-petitioner has physical custody of the child in a state otherwise without jurisdiction under the Uniform Child Custody Jurisdiction Act and it is alleged that mistreatment and abuse at the hands of the physical custodian have occurred. Thus, if a child is alleged to be in this state in the physical custody of a person who is mistreating or abusing the child, a court of this state may assume jurisdiction over the non-custodial parent's petition for change of permanent custody when satisfied upon proof that these allegations are true.
We fully recognize that at least several other states have, again without discussion of this distinction, found jurisdiction to exist under the emergency provision of the Uniform Child Custody Jurisdiction Act upon allegations that the child had been mistreated or abused in the domicile state and, although safe in the asylum state at the time of the petition, was fearful to return to the domicile state. See, e.g., Breneman v. Breneman, 92 Mich. App. 336, 284 N.W.2d 804 (1979); Marcrum v. Marcrum, 181 N.J.Super, 361, 437 A.2d 725 (1981), cert. granted, 89 N.J. 402, 446 A.2d 136 (1982); Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613 (1980). However, we think that to allow the non-custodial parent, such as the petitioner here, who has gained physical custody and control of the children in Florida through visitation, to *1018 vest jurisdiction in a Florida court by alleging past mistreatment and abuse in the domicile state on the part of the custodial parent would be to allow the emergency provision of Section 61.1308(1)(c)2 to subsume all other jurisdictional provisions in total disregard of the purposes of the Uniform Child Custody Jurisdiction Act. See Hricko v. Stewart, 99 Misc.2d 266, 415 N.Y.S.2d 747 (1979) (emergency jurisdictional provision of Act should not be misused so as to defeat the purposes or objectives of the Act). Particularly pertinent here are the following declared purposes of the Act:
"61.1304 Purposes of act; construction of provisions.  The general purposes of this act are to:
"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
"(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
"(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
"(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
"(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards."
To hold that allegations of prior mistreatment and abuse in the domicile state are sufficient to create emergency jurisdiction when the child is in the physical custody of the petitioning parent in the asylum state is to create rather than avoid jurisdictional competition with courts of other states; to encourage rather than discourage the harmful shifting of children from state to state; to have litigation concerning custody take place in a state with no significant connection with the child; to foster rather than prevent continuing controversies over child custody; and to promote rather than deter abduction or removal of children for the purpose of obtaining a child custody award. Indeed, under such a holding, every visit to a non-custodial parent in Florida accompanied by a tale of mistreatment at the hands of the custodial parent in the domicile state would give rise to a petition for change of custody being filed in Florida; the probability of a non-custodial parent removing the child to Florida for the purpose of petitioning the Florida court for a change of custody would be greatly enhanced; and every instance in which the custodial parent is economically disadvantaged to conduct litigation away from the child's domicile would hold the potential for the child's removal to Florida by a more affluent non-custodial parent.
It has been said, however, that the Uniform Child Custody Jurisdiction Act should not be construed so as to give considerations of comity precedence over the best interest of the child. See Marcrum v. Marcrum, 437 A.2d at 727. We do not disregard that caveat, but are of the view that both comity and the child's welfare are accommodated by the rule we adopt and, indeed, that comity promotes the child's welfare. As Justice Breitel noted in Application of Lang, 9 A.D.2d 401, 193 N.Y.S.2d 763, 770 (1959):
"Adherence to the principle of comity provides the key to rational disposition for the welfare of the children, not only in this case, but in many, if not most, custody cases involving self-help. And for this reason: comity makes futile and thus discourages the resort to self-help which in the custody dispute is an irresponsible and barbaric remedy. Not only does self-help make the eventual placement *1019 of the children an arbitrary consequence but it breeds reprisal in kind, as, indeed, happened in this case."
Our conclusion that the court below lacked jurisdiction to change the permanent custody of the petitioner's children does not mean, however, that the court was powerless to act when confronted with a petition alleging that the children had been abused or mistreated and expressing concern that such abuse and mistreatment would resume upon the children's return to the out-of-state custodial parent. Where a Florida court is presented with substantial evidence of imminent physical or emotional danger to the child upon the child's return to the custodial parent, it is, under the doctrine of parens patriae, empowered to issue a temporary protective order which will preserve the status quo for such limited time as is required to permit the petitioner to apply for a change of permanent custody to the state which has jurisdiction over such a petition under the provisions of the Uniform Child Custody Jurisdiction Act. See, e.g., Fry v. Ball, 190 Colo. 128, 544 P.2d 402 (1975); In re Custody of Thomas, 36 Colo. App. 96, 537 P.2d 1095 (1975); Zillmer v. Zillmer, 8 Wis.2d 657, 101 N.W.2d 703 (1960). Accord, Brock v. District Court of County of Boulder, Colo., 620 P.2d 11 (1980). See generally Comment, Temporary Custody Under The Uniform Child Custody Act: Influence Without Modification, 48 U.Colo. L.Rev. 603 (1977). This limited form of temporary judicial relief, recognized in the above-cited cases, is, in our view, sufficient to accommodate the compelling need to protect a child without emasculating the purposes of the Act.[3]Brock v. District Court of County of Boulder, 620 P.2d at 14. However, since in the present case a New York court has already assumed jurisdiction over the issue of the custody of the children,[4] there is no longer any need for the Florida court to give any such relief.
Finally, we are fully aware that the Dade County Circuit Court was the court which, at the time of the dissolution of the parties' marriage, awarded custody of the children to the mother.[5] This fact, however, does not, as the dissent contends, vest perpetual jurisdiction in Dade County over child custody matters.
What the dissent overlooks is that cases decided prior to Florida's adoption of the Uniform Child Custody Jurisdiction Act are no longer reliable authority for the proposition that because a Florida court entered the original custody decree, its jurisdiction over an interstate custody matter continues.[6] Simply stated, the jurisdictional provisions of the Uniform Child Custody *1020 Jurisdiction Act have completely supplanted pre-existing Florida law which allowed a Florida court which had originally awarded custody to exercise jurisdiction over an interstate custody matter without regard to the residence of the children or their continued connection with the State of Florida. Thus, in Hegler v. Hegler, 383 So.2d 1134, the trial court assumed jurisdiction over a custody matter involving children who had resided in Maryland for two years immediately preceding the petition for change of custody filed in Florida. The trial court's assumption of jurisdiction was based entirely upon the fact that it had entered the original custody decree. The appellate court reversed the trial court, stating:
"Florida adopted the Uniform Child Custody Jurisdiction Act effective October 1, 1977. It supersedes prior law in Florida which established the rule relied on by the trial judge in this case as the basis for jurisdiction. [`Decrees pertaining to the welfare of the children are, in a sense, interlocutory and because of this they may be modified, from time to time, as the welfare of the children requires.'] The Uniform Act is designed to give only one state jurisdiction to determine custody, unless exceptional circumstances exist." 383 So.2d at 1136.
Similarly, in Matteson v. Matteson, 379 So.2d 677 (Fla. 2d DCA 1980), the trial court's order changing custody of the minor children to the father and modifying its own earlier order which gave custody to the mother was reversed for lack of jurisdiction where the children had resided with the mother in New York for several years before the father's motion for modification and the jurisdictional prerequisites of the Uniform Child Custody Jurisdiction Act were not met. And see Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979) (Florida court which entered original custody decree without jurisdiction to modify where child was a resident of Alabama for more than six months and jurisdictional prerequisites of Uniform Child Custody Jurisdiction Act not satisfied).
Reversed with directions to dismiss.
JORGENSON, Judge, dissenting.
I respectfully dissent. While I agree with the majority's analysis of the Florida Uniform Custody Jurisdiction Act, sections 61.1302-.1348, Florida Statutes (1981), I do not believe that this record supports reversal.
This case arrives in this court in somewhat of an extraordinary procedural posture.[1] The record reflects that a final judgment of dissolution was entered in the Dade County Circuit Court in March of 1979. That judgment conferred custody of the children upon Donna Nelson. Subsequent to the final judgment of dissolution the former husband and wife modified their property settlement and custody agreement by way of an addendum which changed the custodial status of the children from the wife to the husband and deleted the child support provisions while the children were in the husband's care. This extrajudicial custody modification, which is the genesis for the present residence of the children, was never approved by any court and is, in my view, a nullity. See Forte v. Forte, 320 So.2d 446 (Fla. 3d DCA 1975), cert. denied mem., 351 So.2d 406 (Fla. 1977); Lang v. Lang, 252 So.2d 809 (Fla. 4th DCA 1971). Because no other court had dealt with the custody status of the children, the proper forum to litigate custody was the court that entered the original decree. See Wells v. Ward, 314 So.2d 138 (Fla. 1975); Bohn v. Rhoades, 121 So.2d 777 (Fla. 1960); Marshall v. Marshall, 404 So.2d 1182 (Fla. 2d DCA 1981); Bailey v. Malone, 389 So.2d 348 (Fla. 1st DCA 1980); Adams v. Adams, 374 So.2d 29 (Fla. 3d DCA 1979); Elliott v. Weyman, 337 So.2d 832 (Fla. 1st DCA 1976). This is so notwithstanding section 61.1308 which must, in my view, be read in pari materia *1021 with section 61.13(4), Florida Statutes (Supp. 1982).
The trial court's order did nothing more than find jurisdiction and require certain social reports from the state of Florida and the state of New York. Under the facts of this case I do not believe that order was in error. It may well be that under section 61.1316, Florida Statutes (1981), New York will be the most appropriate forum to litigate this dispute. That issue, however, is not before us. The Uniform Child Custody Jurisdiction Act clearly contemplates communication between the trial courts and on this record I would give them that opportunity. See § 61.1316(4), (5), Fla. Stat. (1981).
Because no error has been demonstrated, I would affirm.
NOTES
[1] The appellee concedes that at the time of the commencement of these proceedings to change the custody of the parties' children to her that New York was, and had been for some three years, the home state of the children; that New York had not declined to exercise jurisdiction, but in fact, shortly after the Florida petition was filed, assumed jurisdiction; that the children had no significant connection with the State of Florida, see Mondy v. Mondy, 428 So.2d 235 (Fla. 1983); and that, therefore, the Florida court was without jurisdiction under other provisions of Section 61.1308.
[2] To the extent that Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1979), holds that emergency jurisdiction (although there found to be dissipated by later events) existed in Florida to change permanent custody upon allegations by the physical custodian-father of prior abuse by the mother in the domicile state, we recede from that specific holding. Trujillo is, however, consistent with our holding, infra, that although such allegations will not confer jurisdiction on a Florida court to change permanent custody, they may confer limited jurisdiction on a Florida court to enter an order giving temporary custody to the petitioning non-custodial parent pending the filing of an application in the state which does have jurisdiction to change permanent custody.
[3] In Vorpahl v. Lee, 99 Wis.2d 7, 298 N.W.2d 222 (1980), the court accomplished the same result using a different analysis. In Vorpahl, where the mother abducted the children from Washington to Wisconsin and there alleged mistreatment having occurred in Washington, the Wisconsin court assumed jurisdiction under the emergency provision, but held that the proceedings in Wisconsin must be stayed in order to allow either party to institute an action in Washington, the convenient forum. The court went on to say that a failure to stay proceedings would undermine the explicit goal of the statute to deter abductions.
[4] We note with disfavor that New York's assumption of jurisdiction while proceedings concerning the custody of these children were pending in Florida was in violation of New York law. See Vanneck v. Vanneck, 68 A.D.2d 591, 417 N.Y.S.2d 258 (1979). It is clear, however, that New York otherwise has jurisdiction which is now perfected with our dismissal of the Florida proceedings.
[5] While we do not agree with the observation in the dissent that the parties' judicially-unconfirmed modification of this custody award, changing custody from the mother to the father, is "a nullity," or that Forte v. Forte, 320 So.2d 446 (Fla. 3d DCA 1975), cert. denied, 351 So.2d 406 (Fla. 1977), or Lang v. Lang, 252 So.2d 809 (Fla. 4th DCA 1971), cited for this proposition, so hold, it is, as will be seen, immaterial whether the award was modified, formally or informally.
[6] Insofar as intrastate custody disputes are concerned, the Uniform Child Custody Jurisdiction Act does not apply, Adams v. Adams, 374 So.2d 29 (Fla. 3d DCA 1979), and the court which entered the custody decree continues to have exclusive jurisdiction to modify the decree. See Marshall v. Marshall, 404 So.2d 1182 (Fla. 2d DCA 1981); Bailey v. Malone, 389 So.2d 348 (Fla. 1st DCA 1980); Adams v. Adams, 374 So.2d 29 (Fla. 3d DCA 1979).
[1] The wife's petition brought pursuant to section 61.1308(1)(c)2, Florida Statutes (1981), should have been treated as a petition to enforce the original custody award. There are few cases addressing extrajudicial modification of custody which would implicate section 61.1318, Florida Statutes (1981), which concededly is not involved here.