467 So.2d 336 (1985)
Joanne DE LA PENA, f/k/a Joanne Torrone, Appellant,
v.
George TORRONE, Appellee.
No. 83-1504.
District Court of Appeal of Florida, Fifth District.
March 7, 1985.
Rehearing Denied April 22, 1985.
*337 Bruce Freedman, of Tralins & Potash, P.A., North Miami, for appellant.
Frank McClung, Brooksville, for appellee.
COWART, Judge.
This case involves an order holding in contempt a non-custodial out-of-state parent who did not timely return a child to the custodial parent after visitation and, when specifically ordered by the court to immediately deliver the child to the custodial parent and to appear before the court, failed to do so.
A valid Florida order dated November 10, 1982, modified a valid Florida final judgment of dissolution and permanently awarded custody of a child to his father granting the mother the right to have the child visit with her in the State of New York for two weeks during summer vacations. The child arrived in New York for two weeks vacation on July 31, 1983, and when it was not returned by September 15, 1983, the father petitioned the Florida court and the court issued an order dated September 16, 1983, requiring the mother to instantly deliver the child to the father in Florida and for the mother to personally appear before the trial court on September 22, 1983, to show cause why she should not be held in contempt for failing to return the child at the expiration of the two weeks vacation visit. The wife did not return the child nor did she attend the September 22 hearing but her attorney appeared and filed the mother's affidavit which attempted to explain her failure to return the child. On October 6, 1983, the trial court found the mother in willful contempt of court for failure to return the child and for failure to personally appear before the trial court on September 22, 1983, in obedience of the court order dated September 16, 1983, and issued an order for attachment of the mother. The mother appeals.
The mother's affidavit that sought to avoid compliance with the Florida trial court order of September 16, 1983, alleges that during the visitation period, the child told the mother that the father had committed numerous serious physical and mental abuses on the child and that on August 12, 1983, the mother petitioned the Family Court of Richmond County in New York State to modify the Florida order of November 10, 1982, and to award the mother the permanent custody of the child and to also immediately modify that Florida order as to the two week visitation period until a hearing in New York could be had on her petition to permanently change custody. The affidavit further states that the New York Family Court, purportedly acting under the New York version of the Uniform Child Custody Jurisdiction Act, entered an order requiring the husband to show cause on or before October 14, 1983, why the wife should not be awarded custody of the child and at the same time the court purported to modify the Florida order by extending the child's visitation period until that date.
On this appeal the mother's counsel contends the mother was just doing what the New York court said she could do and that the New York Family Court had jurisdiction to modify the period of visitation and to authorize the mother not to timely return the child to Florida by acting under the New York equivalent of the Uniform Child Custody Jurisdiction Act (UCCJA) embodied in section 61.1308(1)(c), Florida Statutes (and in New York's Domestic Relations Law, Section 75-d 1(c)), which provides in part:
A court ... has jurisdiction to make a child custody determination by ... modification decree if... [T]he child is physically present in this state and ... it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse... .
*338 The mother's contentions are in error in several particulars. First, the UCCJA (§ 61.1314, Fla. Stat., § 75-g, N.Y.D.R.L.) provides that a court
shall not exercise its jurisdiction under this act, if, at the time the petition is filed, a proceeding concerning the jurisdiction of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act... .
* * * * * *
If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending, to the end that the issue may be litigated in the more appropriate forum and that information may be exchanged in accordance with ss. 61.134-61.1346.
Secondly, the UCCJA (§ 61.133(1), Fla. Stat., § 75-o, N.Y.D.R.L.) provides:
If a court of another state has made a custody decree, a court of this state shall not modify[1] that decree unless: (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act... . (emphasis supplied)
In this case the Florida court rendered the custody decree and on October 14, 1983, the date of the intervention of the New York court into this custody controversy, the Florida court had jurisdiction under UCCJA prerequisites and the New York court did not recognize the jurisdiction of the Florida court nor did it communicate with the Florida court as contemplated by the UCCJA.
In support of her argument that the New York court had jurisdiction under the "emergency provision" of the UCCJA the mother cites Moser v. Davis, 364 So.2d 521 (Fla. 2d DCA 1978), Mondy v. Mondy, 395 So.2d 193 (Fla. 1st DCA 1981), and Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1979), which essentially hold that allegations of threats and acts of violence are sufficient to vest trial courts with jurisdiction to change custody orders under Florida's version of the UCCJA. None of these cases, however, is good law today: Mondy was subsequently quashed by the Florida Supreme Court (Mondy v. Mondy, 428 So.2d 235 (Fla. 1983)), the Third District Court recently receded from Trujillo in Nelson v. Nelson, 433 So.2d 1015 (Fla. 3d DCA 1983), and, in view of McCormick v. Norman, 453 So.2d 515 (Fla. 2d DCA 1984), it appears that the Second District no longer adheres to the view expressed in Moser. The court in Nelson recognized that decisions in Florida as well as in other states, including New York (see Priscilla S. v. Albert B., 102 Misc.2d 650, 424 N.Y.S.2d 613 (1980)) had interpreted the emergency provision as authorizing the exercise of jurisdiction in the noncustodial parent's state when there were allegations of abuse committed by the custodial parent; however, the Nelson court rejected this view and stated:
[W]e think that to allow the non-custodial parent, such as the petitioner here, who has gained physical custody and control of the children in Florida through visitation, to vest jurisdiction in a Florida court by alleging past mistreatment and abuse in the domicile state on the part of the custodial parent would be to allow the emergency provision of section 61.1308(1)(c)2 to subsume all other jurisdictional provisions in total disregard of the purposes of the uniform child custody jurisdiction act. See Hricko v. Stewart, 99 Misc.2d 266, 415 N.Y.S.2d 747 (1979) (emergency jurisdictional provision of Act should not be misused so as to defeat the purposes or objectives of the Act)... . (emphasis supplied)
*339 433 So.2d at 1017-8.
The Third District thus interpreted the act to vest jurisdiction in a trial court only "if a child is alleged to be in this state in the physical custody of a person who is mistreating or abusing the child [and the court is] satisfied upon proof that these allegations are true." (emphasis supplied) 433 So.2d at 1017.
In Nussbaumer v. Nussbaumer, 442 So.2d 1094 (Fla. 5th DCA 1983), this court adopted the view expressed in Nelson and held that trial courts may not assume jurisdiction to make a permanent change of custody merely because of allegations that a child would be subject to mistreatment or abuse if returned to the custody of the other parent. This court did indicate, as did the court in Nelson, that if under such circumstances the trial court is satisfied that it is necessary in the best interest of the child, it may issue a temporary order maintaining custody in a non-custodial parent "for a period of time no longer than is reasonably necessary to allow the [non-custodial parent] to present his allegations of neglect and mistreatment of the [child] by the [custodial parent] to the proper [home state] court." 442 So.2d at 1098. In the instant case, however, the petition presented to the New York Family Court by the mother did not attempt to maintain custody of the child pending a decision by a Florida court on the custody issue; rather, the petition attempted to have the New York courts modify the Florida November 10, 1982, order. This was not proper under the UCCJA. The New York courts, in fact, subsequently realized that they were without jurisdiction to modify the Florida court's November 10, 1982, order: First the New York Supreme Court (trial division) rendered a decision on October 12, 1983, which granted the father's habeas corpus action to regain custody of the child because "there is a simultaneous action pending in Florida and ... the proper jurisdiction in this case is the State of Florida." The Supreme Court further stated that it would enforce the Florida, November 10, 1982, custody order. Two days later (October 14, 1983), the New York Family Court which originally granted the mother's petition to modify custody agreed with the New York Supreme Court's decision that it (the New York Family Court) was without jurisdiction and it dismissed the petition.
Although not argued by the parties, the technical question as to the jurisdiction of the New York courts to intervene in this custody controversy may be controlled by the new federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which as to the facts of this case provides that action by New York is permissible only if New York had jurisdiction (such as under the "emergency provision" of the UCCJA) and Florida no longer had jurisdiction. Of course, in this case the Florida court expressly retained jurisdiction over the custody controversy in the original final judgment and Florida is the home state of the child. If the situation in this case were reversed (i.e., if a party attempted to have the Florida courts modify a valid New York judgment), New York would not recognize that Florida had jurisdiction. See, e.g., Debra S. v. Roger S., 116 Misc.2d 264, 455 N.Y.S.2d 723 (1982).
The mother not only instigated the New York proceeding but the New York court, while it initially undertook to exercise jurisdiction, did not, in any particular, order the mother to not obey the September 16, 1983, order of the Florida court. The mother was not held in contempt for failure to return the child at the end of the two weeks vacation which the New York court attempted to extend; rather, she was held in contempt for failure to obey the trial court order of September 16, 1983, which ordered her to instantly return the child to the father and also required her to appear before the Florida trial court on September 22, which she failed to do.
We have considered the mother's contention that the contempt hearing violated her due process rights as well as the requirements of Florida Rule of Criminal Procedure 3.840 but we find that argument to be without merit.
*340 The order finding the mother in contempt is hereby
AFFIRMED.[2]
ORFINGER, J., and PERRY, R.R., Associate Judge, concur.
NOTES
[1] Note that the use of the term "modify" is incorrect and that the proper word is "supersede". See Nussbaumer v. Nussbaumer, 442 So.2d 1094, 1097 n. 5 (Fla. 5th DCA 1983), and Helmick v. Helmick, 436 So.2d 1122, 1127 (Fla. 5th DCA 1983).
[2] Because the appellant mother has not yet complied with the court order requiring her appearance before the trial court, this court has seriously considered dismissing her appeal for failure to obey the trial court's order. But instead, in this instance, this court has considered the mother's arguments and decided the case on its merits. See Judith M. Goldman, "Dismissal of Appeal for Disobedience in the Trial Court: Fitting Punishment for the Contemptuous Appellant," Vol. IX, No. 3 (Nov. 1983), The Family Law Commentator, a newsletter published by the Family Law Section of The Florida Bar. This article cites Bronk v. Bronk, 46 Fla. 474, 35 So. 870 (1903); Gazil v. Gazil, 343 So.2d 595 (Fla. 1977), and other cases.