566 So.2d 516 (1990)
Mirtha Castellvi ALVAREZ, Appellant,
v.
Robert ALVAREZ, Appellee.
No. 90-648.
District Court of Appeal of Florida, Third District.
April 12, 1990.
Elizabeth S. Baker, South Miami, and Nancy B. Lucas, Miami, for appellant.
Berns & Feinberg and Richard J. Feinberg, Coral Springs, for appellee.
Judith L. Kreeger, Miami, Guardian ad Litem.
Before FERGUSON, COPE and GODERICH, JJ.
COPE, Judge.
Mirtha Castellvi Alvarez appeals an order granting an emergency motion to modify child custody. The order awarded temporary custody of the parties' ten year old child to the father, Robert Alvarez. We reverse.
The father and mother were divorced in Miami, Florida in 1980 and custody was awarded to the mother. When the son was eleven months old, the father kidnapped him and moved to New York. For the next *517 six years the child's whereabouts were concealed from his mother. The father remarried and the child was told that his stepmother was his natural mother.
When the child was six, his location was discovered. The New York courts enforced the Florida custody decree. The child was returned to the natural mother in Miami and the Florida courts again exercised jurisdiction. The father also returned to Miami.
From 1986 onward the court ordered psychological evaluations and counseling, and permitted the father only supervised visitation for fear of another kidnapping. In 1987 and 1988 court-appointed psychologists recommended expanded visitation rights for the father. While they recommended this as being in the best interest of the child, they recognized the potential adverse consequences to all family members if there were another kidnapping. The 1987 report stated:
In order to ensure that Mr. A. will not ever abduct his youngster again, he should be put on some sort of probation for the length of Robert's life, that is, if he abducts him, he may have to end up being incarcerated. Moreover, he can put [up] his properties as an insurance, that he will lose them, if he takes his youngster away.
In 1988 another psychologist recommended expanded visitation rights for the same reasons, but also stated:
While it is expected and understandable given the history of this family that Robert John's mother will be uneasy about this recommendation, this examiner believes such visitation to be in Robert John's best interest and therefore in the real best interest of both Mirtha Castellvi Alvarez and Robert Alvarez. There is no guarantee that Mirtha's worst fears will not come true although this examiner believes the likelihood of such an outcome to be remote. The personal and legal consequences of an abduction should be made perfectly clear to Robert Alvarez notwithstanding the fact that he appears to be quite clear in his understanding of the gravity of this matter. This recommendation is made not only to assist in the reassurance of Mirtha that her son will not be taken away again but also to establish whatever legal record is necessary to ensure that swift and appropriately severe measures would be taken in response to such a destructive and cruel event.

(Emphasis added).
The natural mother remarried. In May, 1989 the mother, stepfather, and child moved to New Jersey, where the mother and stepfather are participating in medical residencies in New York City.
The visitation arrangement was modified to permit the father weekend visitation with the child once every three weeks on a rotational basis. The weekend visitations would occur alternately in New Jersey and Miami, but in either case, the father would have custody of the child for the entire weekend visit.
On Friday, March 16, 1990 the father picked up the child in New Jersey for a New Jersey visitation. The father contends there were bruises on the child's arm which were a result of the mother's striking the child. The father concluded there was abuse by the mother, so he brought the child back to Miami and did not return him to the mother.
On Monday, March 19, late in the afternoon, the father's counsel filed in Miami an emergency petition for change of custody and gave telephone notice to the mother's counsel that a hearing would be held the following morning at 7:15 a.m. Requests to continue the hearing were refused and the trial court held a brief evidentiary hearing on an emergency basis. The mother's counsel was present but the mother, who was in New Jersey, was not. The only testimony at the hearing was that of the father and a statement by a volunteer guardian ad litem who had briefly interviewed the child that morning. The trial court concluded that, although New Jersey has become the home state of the child, the trial court had jurisdiction to act on the emergency petition, at least on an interim basis. The trial court awarded temporary *518 custody to the father pending further order of the court.
Subsequently, this court stayed the order changing custody, which stay order was disobeyed by the father for several days but ultimately was complied with. The appeal has been considered on an expedited basis.
It is undisputed that New Jersey has become the home state of the child. See § 61.1308(1)(a), Fla. Stat. (1989). Recognizing that fact, the father invoked two other jurisdictional provisions of the Uniform Child Custody Jurisdiction Act, the first of which was paragraph 61.1308(1)(c), the emergency provision of the Act. While that provision has very limited scope, it did confer jurisdiction on the trial court to entertain the request for temporary emergency relief as more fully explained in Nelson v. Nelson, 433 So.2d 1015 (Fla. 3d DCA 1983) and Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1979). While we are reluctant to second guess the trial court which was at pains to be available on very short notice, we conclude that the record is wholly inadequate to support the relief granted and therefore reverse the order granting temporary custody to the father.
The father argues alternatively that the trial court has jurisdiction under the "significant connection" provision of the Act, paragraph 61.1308(1)(b), Florida Statutes (1989).[1] The mother contends that once the emergency provision is excluded, sole jurisdiction over this child custody matter exists in the child's home state of New Jersey and Florida cannot exercise jurisdiction in the matter. In determining that it had jurisdiction, the trial court agreed with the father and relied on Barnett v. Barnett, 528 So.2d 1231, 1232-33 (Fla. 4th DCA 1988), a case decided under the "significant connection" provision.
Our court has acknowledged, in common with other courts which have considered the issue and the comment to the Uniform Act itself, that situations will arise in which states have concurrent jurisdiction under the Act. See, e.g., Worth v. Worth, 554 So.2d 586 (Fla. 3d DCA 1989); Newcomb v. Newcomb, 507 So.2d 1145 (Fla. 3d DCA 1987); see also Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 144 (1968).[2] A major goal of the Act is to eliminate jurisdictional conflict, so that where there is concurrent jurisdiction, the inconvenient forum, simultaneous proceedings, and related provisions of the Act are applied to assure that only one state will exercise jurisdiction. See §§ 61.1314, 61.1316, 61.1318, Fla. Stat. (1989). While there is considerable variation in the decisions interpreting "significant connection" jurisdiction under paragraph 61.1308(1)(b),[3] we will assume *519 for present purposes that the statutory test has been satisfied and that Florida's jurisdiction is concurrent with that of New Jersey.[4]
Assuming arguendo that Florida has concurrent jurisdiction, we conclude that Florida should decline to exercise jurisdiction under the inconvenient forum doctrine of section 61.1316, Florida Statutes. The statute provides, in part:
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304.
§ 61.1316(3), Fla. Stat. (1989).
The relevant purposes of the Act, referred to in paragraph 61.1316(3)(e), are, in part, to:
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily *520 available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

.....
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

§ 61.1304, Fla. Stat. (1989) (emphasis added).[5]
It is evident that this matter should proceed in New Jersey. A paramount policy of the Act is to deter abductions, and the unilateral removal of the child from New Jersey cannot be countenanced. The bulk of the relevant contacts are in New Jersey. Except for visitation, the child resides there full-time. In order to determine the circumstances of the child's current care, treatment and education, the evidence must be drawn predominantly from witnesses and records located there. It is appropriate that Florida decline to exercise jurisdiction and that further proceedings be conducted in New Jersey. See Zuccaro v. Zuccaro, 407 So.2d 389, 391-92 (Fla. 3d DCA 1981); Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal.L.Rev. 978, 996-97 (1977).
The father's petition is dismissed without prejudice to refile in New Jersey.[6] The mother is awarded travel expenses and attorney's fees pursuant to subsection 61.1316(7), Florida Statutes (1989).[7]
No petition for rehearing will be entertained.
Reversed; jurisdiction relinquished to the State of New Jersey; jurisdiction retained for an award under section 61.1316(7), Florida Statutes (1989) and remanded for determination of amount.
NOTES
[1] The statute provides:

61.1308 Jurisdiction. 
(1) A court of this state which is competent to determine child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
.....
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships... .
[2] The mother has argued that Hollander v. Hollander, 466 So.2d 268 (Fla. 3d DCA 1985), rejected the possibility of concurrent jurisdiction where a child has left Florida and another state has become the home state. We read the panel majority opinion as having reversed an erroneous determination that Florida was the home state, and as having determined that "significant connection" jurisdiction under paragraph 61.1308(1)(b) was not available, or would not be exercised. Id. at 269. See generally Farrell v. Farrell, 555 So.2d 1260, 1261 (Fla. 3d DCA 1989) (recognizing possibility of concurrent jurisdiction); Nelson v. Nelson, 433 So.2d at 1020 (same).
[3] Some decisions suggest that the showing required in order to establish jurisdiction under the "significant connection" test of paragraph 61.1308(1)(b) is a relatively high one. In two decisions, our court has suggested that exceptional circumstances must be shown. Bretti v. MacDonald, 501 So.2d 168, 169 (Fla. 3d DCA 1987); Nelson v. Nelson, 433 So.2d at 1020 (quoting Hegler v. Hegler, 383 So.2d 1134, 1136 (Fla. 5th DCA 1980)). While "exceptional circumstances" is not part of the statutory text, the comment to the Uniform Child Custody Jurisdiction Act suggests that another state will prevail over the home state only if "the child and his family have equal or stronger ties with [the other] state... ." Id. § 3, 9 U.L.A. 144 (1968 act). The comment goes on to indicate that the purpose of "significant connection" jurisdiction

is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.
Id. § 3, 9 U.L.A. at 145 (emphasis in original).
The fourth district's Barnett decision, relied on by the trial court, follows a different line of Florida authority of which Reeve v. Reeve, 391 So.2d 789 (Fla. 1st DCA 1980), is the leading case. Reeve holds the "significant connection" test of paragraph 61.1308(1)(b) is satisfied where the noncustodial parent continues to reside in the jurisdiction which entered the decree, so long as the noncustodial parent is exercising visitation rights at reasonable intervals. Footnote 2 of Reeve, which quotes an illustration from Bodenheimer, Uniform Child Custody Jurisdiction Act, 22 Vanderbilt L. Rev. 1207, 1237 (1969), has been applied as a "bright line" test for jurisdiction under paragraph 61.1308(1)(b). O'Connor v. O'Connor, 447 So.2d 1034, 1036-37 (Fla. 4th DCA 1984). But see Genoe v. Genoe, 515 So.2d 237, 239 (Fla. 4th DCA 1987); Sperry v. Sperry, 530 So.2d 1043, 1045 (Fla. 2d DCA 1988), review denied, 538 So.2d 1255 (Fla. 1989). Reeve was cited by the Florida Supreme Court in Mondy v. Mondy, 428 So.2d 235, 238 (Fla. 1983), but without discussion of the point under consideration here. Support for the Reeve-Bodenheimer view is found in the comment to section 14 of the Uniform Act:
[I]f custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6 1/2 months ... state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the `home state' of the child... . Also, if the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease.
9 U.L.A. at 292 (citation omitted); cf. Herrero v. Matas, 447 So.2d 335, 337 (Fla. 3d DCA) (continuing contacts with original jurisdiction), review dismissed, 453 So.2d 44 (Fla. 1984).
This expedited case is not the appropriate vehicle to attempt a definitive evaluation of the jurisdictional issue. For present purposes we will assume arguendo that there is "significant connection" jurisdiction and instead resolve the issue under the inconvenient forum provision of the Act.
[4] The child's father, stepmother, and stepsister live in the Miami area, as do other relatives. The child lived in Miami from 1986 to 1989. The child's mother and stepfather live in New Jersey, and there are other relatives in the New York City area. Until age six, the child lived in New York City.
[5] The mother has requested that we decline jurisdiction under the "unclean hands" provision of section 61.1318, Florida Statutes (1989). That section is textually inapplicable here, since the father is not the petitioner for an initial decree, id. § 61.1318(1), and the decree at issue here is one of the State of Florida, not that of another state. See id. § 61.1318(2). The same practical result is achieved by application of subsection 61.1304(5) together with paragraph 61.1316(3)(e), quoted above.
[6] The guardian ad litem has urged that we remand for a further, more orderly inquiry with regard to the child's current living circumstances and the custody arrangements. Our disposition does not foreclose any such inquiry in New Jersey, nor does it foreclose the father's right to assert his claims on petition and proper notice, in New Jersey.

The court expresses its appreciation to the guardian ad litem for her volunteer service in this case.
[7] We remand to the trial court for a determination of the amount of the award. As Florida counsel and the Florida trial court will be in the best position to assess the reasonableness of an award under the statute, Florida will retain jurisdiction for the purpose of making the award.