751 So.2d 1257 (2000)
Carlos Alberto ABUCHAIBE, Appellant,
v.
Paola Andrea ABUCHAIBE, Appellee.
Nos. 3D99-753, 3D98-3128.
District Court of Appeal of Florida, Third District.
March 15, 2000.
E. Joseph Ryan, Jr., Fort Lauderdale, for appellant.
Deutsch & Blumberg and James C. Blecke, Miami, for appellee.
Before COPE and SORONDO, JJ., and NESBITT, Senior Judge.
SORONDO, J.
Carlos Alberto Abuchaibe, the father, appeals the lower court's orders adjudging him in contempt of court and ordering his commitment to jail (case no. 99-753). He also appeals the lower court's final judgment of injunction for protection against domestic violence entered against him, which gives temporary custody of the parties' minor child to the mother (case no. 98-3128). We reverse.
The father and Paola Andrea Abuchaibe, the mother, were married in Colombia in April 1995. The father is a dual citizen of the United States and Colombia and resides in Barranquilla, Colombia. The wife is a Colombian citizen and has resided in the U.S. while attempting to qualify for resident alien status as the spouse of an American citizen. The parties are parents of a child who was born in Miami, Florida in January 1996. The mother left the father and minor child in Colombia in January 1998 and returned to reside in Miami. The father and child remained at their residence in Barranquilla.
*1258 In October 1998, the father came to Miami intending to stay briefly to record under a music contract and brought the child with him to visit the mother. The father alleges that when the mother saw the child only once during the week and expressed no interest in taking care of the child while the father recorded, the father sent the child back to Colombia with the paternal grandmother on October 10, 1998. The day before, on October 9, 1998, the mother obtained an ex parte domestic violence injunction against the father from the Miami-Dade Circuit Court. The injunction was served on the father on October 10, 1998, after the child had left for Colombia.
On October 28, 1998, the court heard witnesses on whether domestic violence occurred between the parties. The proceedings were not recorded and no specific findings of fact on whether domestic violence in fact existed appear anywhere in the record.
In a subsequent hearing on the domestic violence petition on November 6, 1998, the lower court entered a final judgment of injunction against domestic violence by the husband, awarded temporary custody of the child to the mother and ordered the child returned from Colombia by the father on November 30, 1998. The term of the injunction was indefinite. The transcript of that hearing reflects that the child spent about half his life in Florida and half in Colombia. The court also seized the father's U.S. passport and ordered it held by the clerk. There was no mention of any administrative process or other restriction on the child's travel to or from Colombia.
The father then filed a notice of appeal of the injunction on November 25, 1998. At some time after the November 6, 1998 hearing, the father initiated proceedings in Colombia to preclude the child from leaving the country. His lawsuit was filed on November 11, 1998, and a certificate restricting the child's travel was entered on January 7, 1999. At a hearing on November 30, 1998, the father alleges that the trial court was advised of the following: that formal proceedings to determine custody of the child had commenced in Barranquilla on November 19, 1998; that the mother would be served shortly with the action pursuant to Colombian law relating to service of Colombian citizens outside the country by the local Colombian Consulate; that the mother now had actual notice of the proceedings; that the child could not be removed from Colombia pending resolution of those proceedings; and that the father was seeking a stay of proceedings in the trial court pending review by this Court of whether the trial court had jurisdiction to award temporary custody to the mother in the first place. The court took the motion for stay under advisement and set further hearings on the nature of the Colombian proceedings and whether the father was allowed by the Colombian court to remove the child from Colombia. On January 4, 1999, the trial court denied the motion for stay.
In the meantime, the mother filed for dissolution of marriage in the circuit court of Miami-Dade County and sought permanent custody of the child. The mother admitted in the UCCJA[1] affidavit attached to the complaint that the child lived in Colombia from January 1998 through the date of filing on December 12, 1998, but sought permanent custody based on the temporary custody order of the domestic violence court. The father answered the complaint through counsel by denying the court's jurisdiction over the child to make any award of custody whatsoever.
Hearings took place before the lower court on the issue of the Colombian proceedings in January and February and the *1259 father's ability to remove the child from the Colombian court's jurisdiction. The court heard expert testimony from a Colombian attorney who testified that administrative proceedings relating to the child's custody had been commenced by several agencies in Colombia in April 1998, that these administrative proceedings were required to be completed before an action could be formally initiated by the Colombian family court, and that the child could not be removed from the country and the jurisdiction of the Colombian court as a consequence of these initial administrative proceedings. On January 26, 1999, the court heard directly from the Colombian magistrate handling the case at that time that administrative proceedings prior to November 1998 were provisionally binding on the parties until the court could address the merits of the action. The court also heard testimony that the Colombian Consulate in Miami had attempted to serve the mother on three occasions with a copy of the Colombian complaint, the first two times by letter advising her of appointments at the consulate to pick up the complaint and the last time by certified mail to her home address giving her a third appointment. The mother claimed that she had lost her passport and driver's license in December 1998 and did not have a suitable way of identifying herself to the consulate and, therefore, had not received the documents.
After considering the evidence, the court ruled that the mother had not received proper notice of the Colombian proceedings and was denied due process and that the father had not satisfied the court that he could not remove the child from the Colombian family court's jurisdiction. On February 19, 1999, the court entered an order finding the father in contempt of court and on March 2, 1999, ordered the father incarcerated in the county jail effective March 8, 1999.
Trial counsel for the father advised the court on March 2, 1999 that the father had filed on that date a motion to stay all proceedings before Circuit Judge Richard Feder who had primary jurisdiction in this matter as the judge handling the related dissolution of marriage case.[2]
The hearing on the motion to stay took place on March 5, 1999. Judge Feder could find no specific findings of fact in the domestic violence injunction or any record evidence to justify the court's assertion of jurisdiction over the child. Thus, he entered a hand-written order staying all proceedings in the domestic violence case, including the order of commitment of the father for contempt, until he determined through an evidentiary hearing whether facts existed sufficient to allow the court to exercise jurisdiction over the child. He ordered the parties to appear at a calendar call on March 10th to obtain the date for the evidentiary hearing and said that he would enter a more detailed order the following week. The mother responded to this ruling by dismissing her complaint for dissolution on March 8, 1999.
The mother then filed a motion before the domestic violence court to reinstate the contempt order. This motion was granted by Judge Trawick at a hearing on the morning of March 11, 1999, and a writ of bodily attachment was entered later in the day. The father then filed an emergency motion before Judge Feder to enter the order to transfer the domestic violence case into the dissolution case that he had orally granted on March 5, 1999. The father argued that the court had consolidated the cases under the dissolution case number and that the dismissal effectively terminated all trial court proceedings. *1260 This motion was heard on the afternoon of March 11, 1999. Judge Feder denied the motion on the grounds that the cases had not been consolidated, that the dismissal divested him of jurisdiction and that the case was now back before Judge Trawick.
The father now contends that Judge Trawick erred in asserting jurisdiction over the child for the purpose of making a custody determination under section 61.1308(1)(b), Florida Statutes (1997), because the child did not have a significant connection with the State of Florida. We agree.
The basis for the lower court's assertion of jurisdiction over the child was the court's belief that the child and the mother had significant connections with Florida and that jurisdiction was proper under section 61.1308(1)(b). No other basis was found.
As pertinent to this case, section 61.1308 allows Florida courts to make a child custody determination as follows:

61.1308. Jurisdiction
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
. . .
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his or her parents, or the child and at least one contestant, have a significant connection with this state, ...
The father argues that it was not in the best interest of the child for the lower court to assume jurisdiction because the child has no significant connection with the state. We believe that the lower court's application of this statute to the facts of this case was error. Section 61.1308(1)(b) requires that both the parent and the child have a significant connection with Florida. Under the facts of this case, subsection (1)(b) of section 61.1308 does not provide Florida with jurisdiction because there is no showing that the child has a significant connection with this state. Here, the child's only connection to Florida was the fact that his mother was living here while attempting to obtain permanent residency for herself. This Court and other district courts have made clear that merely having a parent who lives in Florida will not support a finding under section 61.1308(1)(b) that the child has a significant connection with this state. See Gonzalez v. Gonzalez, 654 So.2d 257 (Fla. 3d DCA 1995); Brown v. Tan, 395 So.2d 1249 (Fla. 3d DCA 1981); see also Dorrity v. Dorrity, 695 So.2d 411 (Fla. 5th DCA 1997); Kennedy v. Kennedy, 559 So.2d 713 (Fla. 5th DCA 1990); Hegler v. Hegler, 383 So.2d 1134 (Fla. 5th DCA 1980).
In addition, the child had resided in Colombia for approximately twenty-two of his thirty-three months at the time of the court's ruling in November 1998 and had lived with his father in Colombia since January 1998. The child was present in Florida for only six days prior to the mother's filing for the domestic violence injunction and custody, and the child was only in Florida to visit his mother, not to establish a new residence in this country. The father stated that he planned to continue residing in Colombia, and the mother's application for residency could be denied at any time.
Because there is no legally significant connection between the child and Florida, the exercise of jurisdiction was not proper under section 61.1308(1)(b). Thus, the lower court's custody order was erroneous and must be reversed.
The father also argues that the trial court erred in finding him in contempt of its custody order because the father was barred from removing his son from Colombia by administrative and judicial order. We agree.
The record indicates that the father attempted to demonstrate to the court that *1261 the child could not be removed from the Colombian court's jurisdiction in Barranquilla and given to his mother because of the administrative and judicial proceedings relating to the father's custody action against her. The father further attempted to demonstrate that the mother was refusing to respond in the Colombian proceedings by willfully ignoring attempts to serve her with formal notice of the action through the Colombian Consulate in Miami. We find that the documents and evidence presented by the father establish that the child must remain within Colombia's jurisdiction until the custody claim filed there is resolved.
Accordingly, because the father does not have the ability to comply with the lower court's order, the contempt adjudication is reversed. See Contreras v. Contreras, 696 So.2d 506 (Fla. 3d DCA 1997).
Reversed.
NOTES
[1] Florida adopted the Uniform Child Custody Jurisdiction Act ("UCCJA") effective October 1, 1977. It governs subject matter jurisdiction over child custody matters and is designed to give only one state jurisdiction to determine custody, unless exceptional circumstances exist. See §§ 61.1302-.1348, Fla. Stat. (1997).
[2] As concerns the issue of which judge had primary jurisdiction, the domestic violence injunction reads in pertinent part: "Subsequent orders of court entered in an action filed under chapter 61 Florida Statutes supersede and take precedence over any inconsistent provision of this injunction." Additionally, the administrative rules of the family division in effect at the time of these events specifically designated the court handling the dissolution proceeding as having primary jurisdiction.