JOHN B. VANNECK, Respondent, v ISABELLE K. VANNECK, Appellant.

First Department, June 14, 1979

### APPEARANCES OF COUNSEL

*William G. Mulligan* of counsel *(Sandra W. Jacobson, Hadassah R. Shapiro* and *Howard J. Pobiner* with him on the briefs; *Mulligan & Jacobson,* attorneys), for appellant.

*Julia Perles* of counsel *(Sheila Ginsberg* and *John Duane* with her on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for respondent.

### OPINION OF THE COURT

LUPIANO, J.

The parties were married in New York in 1965 and have three children. The family lived together in a life-style embracing utilization of two homes, one in New York and one in Connecticut. The Connecticut home was used on weekends,

vacations and during the summer months, with the remainder of the time allotted to the New York residence. Defendant having gone to the Connecticut home with the children in December, 1978, remained there and instituted a divorce action in Connecticut. The papers in that action, which were personally served upon plaintiff (husband) in Connecticut, contain a motion for temporary alimony and custody of the children. After appearing in that action, plaintiff initiated the instant action in New York for divorce and subsequently moved in his New York action to enjoin his wife, defendant herein, from further prosecuting her divorce suit in Connecticut, to obtain temporary custody of the three children from Sunday evening through Friday and to restrain defendant from removing certain items of personalty from the marital residence in New York. The latter relief was not opposed.

Special Term viewed New York as the primary residence having the most vital contacts and thus determined to enjoin defendant from continuing her Connecticut action, to grant temporary custody to plaintiff from Monday through Friday of the children and to, in effect, prevent defendant and the children from continuing with their education in Connecticut.

What is specifically involved here and determinative of this appeal is the application of article 5-A of the Domestic Relations Law (Uniform Child Custody Jurisdiction Act). Section 75-d of the Domestic Relations Law states in pertinent part:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:

"(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, *or* (ii) had been the child's home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, *and* a parent or person acting as parent continues to live in this state; *or*

"(b) it is *in the best interest of the child* that a court of this state assume jurisdiction because (i) the child and his parents, *or* the child and at least one contestant, have a significant connection with this state, *and* (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships; *or*

"(c) the child is physically present in this state *and* (i) the

child has been abandoned *or* (ii) it is necessary in an emergency to protect the child; *or*

"(d)(i) it appears that no *other state* would have *jurisdiction* under prerequisites *substantially in accordance with paragraph (a), (b), or (c),* or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction" (emphasis supplied).

Similarly, section 75-g of the Domestic Relations Law provides in pertinent part: "1. A court of this state *shall not exercise* its *jurisdiction* under this article *if at the time of filing* the *petition* a *proceeding* concerning the custody of the child was *pending in* a court of *another state* exercising *jurisdiction substantially in conformity* with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons" (emphasis supplied).

Thus, the issue initially confronting Special Term was whether under section 75-g the Connecticut court was exercising jurisdiction *substantially* in conformity with article 5-A of the Domestic Relations Law. Before analyzing this topic, it should be noted that we have heretofore observed that " 'The right to maintain a divorce action is predicated upon legitimate domicile. All States of the Union are open to establishing domicile therein. A permanent injunction restraining a person from establishing * * * a bona fide domicile in any other State of the Union even though one of its purposes may be to institute an action for divorce is unauthorized. *(Estin v Estin,* 334 US 541.)' *(Sivakoff v Sivakoff,* 280 App Div 106, 108.)" *(Annexstein v Annexstein,* 50 AD2d 755.) Further, it should be noted that although the children have been commuting from Connecticut to school in New York, they are enrolled in Connecticut schools for the spring 1979 term and there is some question as to the availability to them and to their mother, defendant herein, of plaintiff's New York house in view of the assertion that plaintiff changed the locks on the New York residence while defendant and the children were in Connecticut for the 1978 Christmas vacation and gave them no keys to the new locks, intending, instead, to sell this house.

Regarding the *bona fides* of Connecticut domicile, defendant unequivocally states that she is a domiciliary of Connecticut, residing with the children in the Stamford house purchased

by plaintiff in 1972. She avers that her present and prior automobiles were registered in Connecticut, she is a member of the Greenwich YWCA since the summer of 1978 and a member of St. Barnabas Episcopal Church in Greenwich, Connecticut. She advances maintenance of some duration respecting charge accounts at various stores in Greenwich and declares that her decorating business, known as Interiors IV, has been operated from Stamford, Connecticut, for the past two years. She apparently is working on two homes in Connecticut, her business emanating from Interiors IV being restricted to date to Connecticut and nearby parts of Westchester.

Defendant states that the children heretofore have spent approximately one half their time in Connecticut and the other half in New York, thereby developing close and personal ties in Connecticut, similar, one may suppose, to those in New York.

The Uniform Child Custody Jurisdiction Act was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association, in 1968, and subsequently adopted in New York to take effect September 1, 1978 (L 1977, ch 493, § 2). In the commissioners' prefatory note to the act it is noted, in pertinent part: "There is growing public concern over the fact that thousands of children are shifted from state to state * * * every year while their parents * * * battle over their custody in the courts of several states. * * * To remedy this intolerable state of affairs where self-help and the rule of 'seize-and-run' prevail rather than the orderly processes of the law, uniform legislation has been urged in recent years to bring about a fair measure of interstate stability in custody awards. * * * The Act * * * limits custody jurisdiction to the state where the child has his home or where there are other strong contacts with the child and his family. * * * Also, the Act opens up direct lines of communication between courts of different states to prevent jurisdictional conflict and bring about interstate judicial assistance in custody cases. * * * Underlying the entire Act is the idea that to avoid the jurisdictional conflicts and confusions which have done serious harm to innumerable children, a court in one state must assume major responsibility to determine who is to have custody of a particular child; *that this court must reach out for the help of courts in other states in order to arrive at a fully informed judgment* [emphasis added] which transcends

state lines and considers all claimants, residents and nonresidents, on an equal basis and from the standpoint of the welfare of the child. If this can be achieved, it will be less important *which* court exercises jurisdiction but that *courts of the several states involved act in partnership* to bring about the best possible solution for a child's future" (9 ULA [Master Ed], pp 99-102).

Special Term, although aware of the pending action in Connecticut which involved, *inter alia,* the issue of custody of the children, viewed the marriage of the parties as having such deeply imbedded roots in New York, that New York clearly was "the place with which the children and the family had the closest connection and where significant evidence concerning their care, protection, training, and personal relationship are most readily available" (citing Domestic Relations Law, § 75-b, subd 1, par [c]). While this is one of the purposes of article 5-A, it is not the only purpose. Of equal dimension are the following purposes: to "avoid jurisdictional competition and conflict with courts of other states" (subd 1, par [a]), to "promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child" (subd 1, par [b]); to "discourage continuing controversies over child custody in the interest of greater stability of home environment" (subd 1, par [d]) and to "promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child" (subd 1, par [h])—all subdivisions of section 75-b of the Domestic Relations Law.

Thus, it would appear on this record, especially in view of the clashing affidavits presented by the parties whereby only a certain amount of uncontested factual averments are disclosed, that Special Term might well have availed itself of the salutary information gathering and co-operation between sister State courts envisioned in article 5-A. If defendant is to be believed, and regarding the changed locks and endeavor to sell the New York residence, not denied, by plaintiff, Connecticut clearly has jurisdiction, not exactly, but substantially in conformity with article 5-A. Connecticut would appear to be the home State of the children at the time of initiation of the action involving custody, and the defendant mother and the children appear to have a significant connection with Connecticut and there appears to be within Connecticut substantial

evidence concerning the children's future care, protection, training, and personal relationships. Be that as it may, Special Term was informed during the course of plaintiff's motion seeking partial temporary custody and discontinuance of the children's schooling in Connecticut, that there was pending in Connecticut defendant wife's claim to custody. Under section 75-g of the Domestic Relations Law, it was incumbent upon Special Term to communicate with the Connecticut court "to the end that the issue may be litigated in the more appropriate forum". This was not done.

Both Connecticut and New York have adopted the Uniform Child Custody Jurisdiction Act (effective date in Connecticut being Oct. 1, 1978). Further, by order entered February 27, 1979, this court stayed those provisions of the order appealed from which directed partial temporary custody in plaintiff and that the children be returned to New York City, on condition that defendant afford plaintiff weekend visitation in New York.

It is beyond cavil on this record that Connecticut is no stranger to this family unit, and a relationship between that State and this family unit existed prior to defendant's determination to remain there with the children. While the relationship, at least heretofore, between the family and New York might have been greater in comparison with the Connecticut relationship, it suffices for full implementation, under the circumstances herein, of the co-operative and informational exchange features of section 75-g of the Domestic Relations Law. In other words, it appears that the family substantially lived in both New York and Connecticut, albeit for differing periods of time.

The commissioners' note discloses that both sections 75-g and 75-h of the Domestic Relations Law must be read together and that even where it appears that the court in the sister State would not have jurisdiction under the criteria of this act, "the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other court even under such circumstances" (9 ULA [Master Ed], p 112). Further, the commissioners' note discloses that when the courts of more than one State have jurisdiction under section 75-d of the Domestic Relations Law, priority in time determines which court will proceed with the action subject to application of the inconve-

nient forum principle delineated in section 75-h of the Domestic Relations Law.

An excellent analysis of the interplay of the various provisions of the Uniform Child Custody Jurisdiction Act is set forth in *Carson v Carson* (29 Ore App 861, 865) wherein it was observed in pertinent part: "Under the Act the court must go through a multistep process in determining whether to exercise jurisdiction. First it must ascertain whether it has jurisdiction * * * If it finds that there is jurisdiction, then the court must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, the Oregon Court must decline to exercise its jurisdiction. * * * Finally, assuming the court has jurisdiction and there is not a proceeding pending or a decree, the court then must determine * * * whether to exercise its jurisdiction because of convenient forum."

Under the circumstances herein, it is not possible to determine which State, New York or Connecticut, is the more preferable forum from the standpoint of the children's best interest or which State has the optimum access to evidence. A critical primary purpose of the act was to avoid jurisdictional competition and to promote co-operation with the courts of other States. As set forth in subdivision 3 of section 75-g of the Domestic Relations Law: "If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and *communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged* in accordance with sections seventy-five-s through seventy-five-v of this article" (emphasis supplied). The spirit of this section has been viewed as imposing an affirmative duty on the court to examine the question of the pending proceeding in the other State's court and to determine as a preliminary matter whether to exercise jurisdiction (see *Paltrow v Paltrow,* 37 Md App 191, 195-199).

The overriding criterion is of course, the best interest of the children (Domestic Relations Law, § 75-a, subd 3; § 75-d, subd 1, par [b]). Special Term did not address itself to this issue. Therefore, the policy considerations underlying the act, the best interests of the children and common sense dictate that on this record Special Term should have held the proceeding

in *status quo* with a view toward communicating with the Connecticut court "to the end that the issue may be litigated in the more appropriate forum" and implementing the remedial aspects embodied in sections 75-s to 75-v of the Domestic Relations Law.

In any event, the precipitate change in the custody status of the children effected by Special Term's awarding partial temporary custody to plaintiff Monday through Friday, without full hearing in which all relevant aspects of the matter are considered and weighed, was improper. Parenthetically, it is noted that plaintiff has appeared in the Connecticut action and has availed himself of the opportunity to litigate there the issue of the propriety of that action, including matters of domicile and the question of whether defendant commenced the action in Connecticut to avail herself of Connecticut's equitable distribution statute.

Accordingly, the order of the Supreme Court, New York County (BLYN, J.), entered February 5, 1979, which, *inter alia,* granted plaintiff's motion to enjoin defendant from further prosecution of a divorce action in Connecticut and to obtain custody of the parties' three children from Monday to Friday of each week, should be modified, on the law, to the extent of reversing so much of said order as (1) enjoins defendant from further prosecution of her divorce action in Connecticut, (2) awards temporary custody of the parties' children to plaintiff from Monday to Friday and restricts defendant's custody to weekends, and (3) enjoins defendant from enrolling the children in school in Connecticut and if they are already so enrolled, directs her to terminate such enrollment and to return the children to New York City for continuation of their education, and, as so modified, should be affirmed, without costs and disbursements, and the matter remanded for further proceedings in accordance with the aforesaid observations of this court.

KUPFERMAN, J. P. (dissenting in part). The parties were clearly domiciled in New York. The defendant wife took advantage of the opportunity, while being in their second home in Connecticut, to bring legal proceedings in that State, and the plaintiff husband immediately started proceedings in New York State.

The Uniform Child Custody Jurisdiction Act (Domestic Rela-

tions Law, art 5-A, § 75-a *et seq.),* which both New York and Connecticut have adopted, was not meant to justify forum shopping, but rather to avoid interference with legitimate custody proceedings. (See 1977 Survey of New York Law, Family Law, Foster and Freed, 29 Syracuse L Rev 568, 570; see, also, *Gersten v Gersten,* 61 AD2d 745.) The court was therefore correct in enjoining prosecution of the action in Connecticut by the wife. There had been no custody determination in Connecticut at the time of the New York decree. Therefore, in accordance with section 14 of the Uniform Child Custody Jurisdiction Act (our equivalent section is Domestic Relations Law, § 75-o), the Connecticut court could not modify our decree, the New York court properly having jurisdiction. (See Children of Divorce & Separation, Senator Malcolm Wallop, 15 Trial, No. 5, May, 1979, pp 34, 35, col 3.)

Nonetheless, I would modify in one respect. The plaintiff husband was granted physical custody on weekdays, and the defendant wife was granted physical custody on weekends. This was on the assumption, then valid, that the children were residing with the mother on weekends in Connecticut, but attending school in New York. The situation has now changed, and there should be a hearing with respect to the question of who is best suited to obtain custody and as to visitation.

BIRNS and SULLIVAN, JJ., concur with LUPIANO, J.; KUPFERMAN, J. P., and SILVERMAN, J., dissent in part in an opinion by KUPFERMAN, J. P.

Order, Supreme Court, New York County, entered on February 5, 1979, modified, on the law, to the extent of reversing so much of said order as (1) enjoins defendant from further prosecution of her divorce action in Connecticut, (2) awards temporary custody of the parties' children to plaintiff from Monday to Friday and restricts defendant's custody to weekends, and (3) enjoins defendant from enrolling the children in school in Connecticut and if they are already so enrolled, directs her to terminate such enrollment and to return the children to New York City for continuation of their education, and, as so modified, affirmed, without costs and without disbursements, and the matter remanded for further proceedings in accordance with the opinion of this court filed herein.