**In re the Marriage of Houshang S. NAZAR, Petitioner, Respondent,**

v.

**Carol K. NAZAR, Appellant.**

No. C9-93-515.

Court of Appeals of Minnesota.

Aug. 31, 1993.

Review Denied Oct. 28, 1993.

## OPINION

NORTON, Judge.

Appellant, who has a judgment and decree of dissolution from the State of Louisiana, challenges the jurisdiction of the Minnesota trial court to issue a judgment and decree that awarded custody, child support, maintenance, property, and attorney fees to respondent. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Carol Nazar married respondent Houshang Nazar on April 14, 1984 in the State of Louisiana. They have two children born to their marriage: Nicholas, born July 27, 1986, and Joshua, born September 23, 1988. The Nazar family lived in Louisiana from their marriage in 1984 until March of 1988 when they moved to Minnesota. In May 1990, appellant took her children to Louisiana to attend a wedding. Once she arrived in Louisiana, she immediately filed for legal separation, asking for custody of the children. She claimed that she fled Minnesota and resettled in Louisiana in order to escape the emotional and physical abuse that respondent had perpetrated upon appellant and the two children. The Louisiana trial court asserted emergency jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) and granted appellant custody. Appellant is now a full-time nursing student who lives with her parents and receives AFDC. Respondent is a sales clerk who earns $1200 gross per month.

Although respondent received service by certified mail of the Louisiana proceedings, he commenced his own divorce proceedings here in Minnesota in July 1990. The trial court declined jurisdiction over the child custody issue in deference to the Louisiana proceedings then in progress. Respondent appealed that decision to the Minnesota Court of Appeals.

During the time that appeal was pending, however, appellant received her judgment of legal separation in Louisiana on November 6,

Barry M. Lazarus, Ann Meredith–Will, O'Connor & Hannan, Minneapolis, for respondent.

Stephen C. Aldrich, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and KALITOWSKI and FLEMING,* JJ.

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

1990 and then received her judgment of divorce from the State of Louisiana in June of 1991. In August of 1991, the Minnesota Court of Appeals remanded the earlier trial court decision declining jurisdiction here in Minnesota and required the trial court to examine whether Louisiana had properly exercised emergency jurisdiction. *Nazar v. Nazar,* 474 N.W.2d 206, 209 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 16, 1991).

On remand, the trial court concluded that Louisiana had improperly exercised emergency jurisdiction and determined that proper jurisdiction lay in Minnesota. The trial court filed this order December 9, 1991. Appellant never appealed the order asserting jurisdiction. The court then ordered a custody and visitation evaluation and granted temporary legal and physical custody to appellant. Thereafter, the trial court ordered appellant to return to Minnesota with her children in order to facilitate the custody evaluation with the court services department and to give respondent an opportunity to visit his children. In this order, the trial court notified appellant of the potential consequences should she fail to appear: she would be held in contempt and would have her pleadings stricken from the record.

In letters to the court, appellant explained that her lack of finances and her academic schedule would preclude her from appearing. In the first letter she requested plane tickets and accommodations from respondent. Apparently he did not oblige, because appellant did not appear. In the second letter, she requested the court to change the December pre-trial hearing date to accommodate her exam schedule. The trial court refused to change its order without a motion hearing. Appellant's counsel made no such motion and the pre-trial hearing date remained unchanged.

Neither appellant nor her counsel appeared on December 7, 1992 for the final hearing on the dissolution. As a result, the trial court found her in contempt and struck all her pleadings from the record. Respondent proceeded in default. The trial court entered the final judgment and decree of dissolution on December 17, 1992. This decree granted respondent sole legal and physi-

cal custody of the children and awarded him $200 monthly child support, $400 monthly maintenance, a property settlement of $9872.25, the homestead and car, and $35,000 in attorney fees already incurred. In addition, the decree gave appellant an ongoing duty to pay respondent's fees related to the custody of the children.

Upon notice of appeal, this court questioned jurisdiction. After soliciting memoranda from the parties, a special term panel dismissed the portion of the appeal regarding jurisdiction under UCCJA but allowed appellant to proceed with her substantive issues.

## ISSUES

1. Is the jurisdictional issue properly before this court?

2. Did the trial court abuse its discretion when it awarded child custody, child support, maintenance, property, and fees after a default hearing?

## ANALYSIS

### I. Jurisdiction

 Appellant argues Minnesota lacked jurisdiction to issue the December 1992 judgment and decree because it had a duty to give full faith and credit to the 1991 Louisiana decree. The Minnesota trial court found that jurisdiction properly rested in Minnesota in its order filed December 9, 1991. On December 11, 1991, respondent served appellant by mail with notice of filing of the order. The time to appeal that order expired 33 days after respondent mailed appellant the notice of the filing. *See* Minn.R.Civ.App.P. 104.01. Appellant did not challenge the court's determination of jurisdiction until after the trial court issued the dissolution decree in December 1992, long after the order had become final and unappealable. A party who fails to appeal is bound by the decision of the trial court. *See Tischendorf v. Tischendorf,* 321 N.W.2d 405, 409 (Minn.1982) (failure to timely appeal is a jurisdictional defect), *cert. denied* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

Based upon this procedural posture, this court's special term panel concluded, "Appel-

lant's failure to timely appeal the December 9, 1991 order deprives this court of jurisdiction to review it. *See* Minn.R.Civ.App.P. 126.02." Our review of the issue leads us to the same conclusion. The 1991 order exercising Minnesota jurisdiction under the UCCJA is law of the case. We will not review the question of whether or not Minnesota properly exercised jurisdiction over this case.

## II. Review of Decree

■■■ Appellant seeks review directly from the default judgment, having made no post-trial motion to vacate.

> [A] party in default may not raise procedural irregularities on appeal which were not raised below, provided that adequate and expeditious relief is available by motion in the trial court.

*Thorp Loan and Thrift Co. v. Morse*, 451 N.W.2d 361, 363 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990). Our review is limited, therefore, to whether the evidence on record supports the findings of fact and whether the findings support the conclusions of law set forth by the trial court. *Kuchenmeister v. Kuchenmeister*, 414 N.W.2d 538, 541 (Minn.App.1987). The trial court struck appellant's pleadings from the record as a sanction for her repeated non-appearance. Such a sanction is permitted by Minn.R.Gen.Pract. 307:

> Failure to appear at the scheduled final hearing may result in the case being stricken from the contested calendar, granting of partial relief to the appearing party, striking of the non-appearing party's pleadings and the hearing of the matter as a default, an award of attorney's fees and costs, and such other relief as the court finds appropriate, without further notice to the defaulting party.

The evidence in the record for review is thus limited to only respondent's pleadings, appellant's deposition, and the transcript of the default hearing because "[e]vidence not produced and received below may not be considered by the appellate court." *Thorp Loan and Thrift Co.*, 451 N.W.2d at 362.

■■ Appellant challenges the award of custody, child support, spousal maintenance and marital property. These issues rest within the broad discretion of the trial court. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). The court abuses that discretion only when it issues clearly erroneous conclusions that are against logic and the facts on record. *Id.* We will discuss each of these issues in turn.

### A. *Custody*

Appellant argues that the trial court failed to make appropriate findings to support child custody to respondent. We agree.

■■■ When determining custody, the trial court must consider the best interests of the children in view of the statutory factors set out in Minn.Stat. § 518.17, subd. 1 (1992). While the trial court must consider all these factors that pertain to the best interests of the children, the court need not make a specific finding on each and every one. *Schultz v. Schultz*, 358 N.W.2d 136, 138 (Minn.App.1984).

■■ At the foundation of this dissolution are appellant's allegations that respondent physically, emotionally and verbally abused appellant and their two children. The trial court must seriously examine any allegations of child abuse before determining custody. *Uhl v. Uhl*, 395 N.W.2d 106, 111 (Minn.App. 1986).

■■ The trial court here never had the opportunity to reach any informed conclusions regarding the alleged abuse, because appellant failed to appear in Minnesota to participate in the custody evaluation. When, as here, evidence on the record left unanswered questions pertaining to the best interests of the children, the trial court had a duty "to uncover reliable evidence to show the best interests of the children." *Lucas v. Lucas*, 389 N.W.2d 744, 747 (Minn.App.1986) (case remanded to allow trial court to demand further evidence or a child welfare study before granting custodial parent's motion to remove children).

■■ The trial court here, however, summarily dismissed appellant's allegations be-

fore fully investigating them. The trial court found:

> In order to obtain emergency jurisdiction in the State of Louisiana, [appellant] falsely, maliciously, wrongfully, intentionally, and wantonly, alleged conduct on the part of [respondent] with respect to the emotional or physical abuse of the minor children, notwithstanding such allegations were groundless, untrue, and constituted a fraud on the Louisiana court.
>
> \* \* \* \* \* \*
>
> [Appellant's] conduct to date demonstrates to the Court her allegations as to [respondent] and his relationship with the parties' minor children were without merit or were untrue, false and malicious.

The court further found:

> It was and is not reasonable to believe that [appellant], by her actions, believed it was necessary to protect the children from physical or sexual assault or substantial emotional harm from [respondent]. After abducting the minor children to Louisiana on May 30, 1990, [appellant] consulted only one or two times with a medical doctor or psychologist with the minor children, not withstanding her allegations of emotional or physical abuse by [respondent], and only then after it was suggested by her Louisiana attorney. The minor children received no treatment. \* \* \* [Appellant] did not or could not reasonably believe that her actions were necessary to protect herself from physical or sexual assault.

The facts on record do not support these findings. The record contains no evidence that appellant maliciously concocted these allegations of abuse. In appellant's deposition, which was properly in the trial court record, appellant testified that respondent verbally abused her and the children daily, and physically abused them occasionally. She testified to her son's nightmares caused, allegedly, by fear that respondent would hurt him. She also testified to the escalating verbal and physical abuse that had occurred in the months immediately prior to her departure from Minnesota in 1990. We cannot say that summarily dismissing these allegations fulfilled the court's duty to uncover evidence relating to the best interests of the children before awarding custody.

While we acknowledge the court's findings on respondent's family environment and his ability to parent, neither these findings alone nor the evidence on record are sufficient to support the court's finding that custody in respondent serves the best interests of the children in light of the fact that the trial court failed to consider the children's primary caretaker, failed to make findings on the children's environment or their adjustment to life in Louisiana, and dismissed summarily all allegations of child abuse.

## B. *Child Support*

Appellant next argues the trial court abused its discretion when it ordered her to pay $200 monthly child support. We agree.

When awarding child support, the trial court must consider the statutory guidelines and factors set out in Minn.Stat. § 518.-551, subd. 5(b) (1992). These factors include the financial resources and financial needs of both parents. *Id.* Further, the court must make specific findings regarding the factors it considered when awarding support. *Moylan v. Moylan,* 384 N.W.2d 859, 863 (Minn. 1986). The trial court here did not make findings on appellant's financial resources or needs, as required by *Moylan.*

"The obligation to pay child support is premised on the obligor's ability to pay," but the court may consider the obligor's earning capacity if her unemployment is in bad faith. *Schneider v. Schneider,* 473 N.W.2d 329, 332 (Minn.App.1991).

> Absent such a finding of bad faith, a trial court may not order child support from an individual currently unable to pay support due to unemployment.

*Id.*

The trial court here found that although appellant was a senior in college completing her bachelor's degree in nursing, she "has the capacity to earn funds for her support and support of the minor children of the parties, but she chooses to not be gainfully employed."

■ Even given the limited record on appeal, we find no evidence to support the court's final statement. In her deposition, appellant testified that she receives AFDC, carries a full load of coursework at the university, lives with her parents, and receives financial help from them. She expressed her intent to work as a registered nurse when she has completed her degree. This record does not connote a bad-faith unwillingness to find employment. Furthermore, without a specific finding that appellant acted in bad faith, the trial court could not consider appellant's earning capacity. *See Schneider,* 473 N.W.2d at 332.

Because the trial court failed to make any findings regarding appellant's finances to justify the child support obligation, we remand for consideration and proper findings on this issue.

### C. *Maintenance*

■ Appellant alleges the trial court granted respondent relief beyond that which he requested in the petition for dissolution when it awarded him $400 monthly spousal maintenance.[1] We agree.

> In a default judgment, the relief awarded to the plaintiff must be limited in kind and degree to what is specifically demanded in the complaint even if the proof would justify greater relief.

*Thorp Loan and Thrift Co.,* 451 N.W.2d at 363. Respondent's petition did not request spousal maintenance; he simply requested that appellant not receive any maintenance. In awarding respondent spousal maintenance, the trial court not only granted $400 per month more than requested, but also made the award in default without any notice to appellant. Such an award cannot stand. *See id.* at 364 (excess relief is "extrajudicial and void").

### D. *Property Division*

■ Appellant argues the trial court abused its discretion when it divided the marital assets. We cannot agree. The statute requires the court to "make a just and equitable division" of marital property upon dissolution. Minn.Stat. § 518.58, subd. 1 (1992). This distribution need not be mathematically equal. *Ruzic v. Ruzic,* 281 N.W.2d 502, 505 (Minn.1979).

The only property the parties owned was a car and the homestead in Winona, Minnesota. Because the homestead had been foreclosed prior to the court's division of property in December 1992, the parties' only remaining interest was the redemption rights in that foreclosure proceeding. The trial court awarded respondent all interest in the homestead, all furniture, all household goods and personal property in his possession, and the car. Appellant was awarded all household goods, furnishings and clothing in her possession in Louisiana. In addition, the court ordered appellant to pay as a property settlement $9872.25 which is the current value of a cash advance that appellant took out on their credit card when she initially left the State of Minnesota with the children in May of 1990. Since that time, respondent has been attempting to pay the monthly payments of the account balance plus interest to repay that "loan" from the credit card.

Seeing as the parties have little or no equity in the homestead, the award of the property to respondent does not appear to create an inequitable distribution of the marital property. Further, the cash advance and repayment thereof is technically appellant's own debt that she should be responsible for paying. This record does not suggest that the trial court abused its discretion in dividing the marital property.

### E. *Attorney Fees*

■ Finally, appellant asserts the trial court abused its discretion when it awarded respondent $35,000 in attorney fees. We agree. The trial court may award attorney fees when it finds that fees are necessary for a party to assert his rights in an action, the payor has the financial means to pay the fees, and the payee lacks the means to pay the fees. Minn.Stat. § 518.14 (1992). The award of attorney fees rests within the broad

---

1. Appellant also alleges the trial court abused its discretion when it failed to make proper findings to support the maintenance award. Because we have disposed of the maintenance issue as extrajudicial relief, we need not evaluate the court's findings.

discretion of the trial court and will only be reversed upon an abuse of that discretion. *Berenberg v. Berenberg,* 474 N.W.2d 843, 849 (Minn.App.1991), *pet. for rev. denied* (Minn. Nov. 13, 1991).

We find no one party solely responsible for the complex and protracted procedural history of this case so as to justify attorney fees as recourse for bad faith. *See Dabrowski v. Dabrowski,* 477 N.W.2d 761, 766 (Minn.App. 1991). On the contrary, we cannot ignore the fact that respondent has contributed to the jurisdictional complexity of this case by refusing to appear in the Louisiana proceedings to contest jurisdiction; instead he initiated a separate, simultaneous dissolution proceeding here in Minnesota. The record shows that both parties, their attorneys, and the courts of the two states have contributed to the problem. Given the record of the parties' financial resources, a fee obligation of $35,000 from appellant·is overburdensome and an abuse of discretion.

### III.

Remanding this case to the Minnesota trial court for further evaluation of the substantive matters under the decree does not resolve the problem at the heart of this case: the parties have two contradictory dissolution decrees from two separate, non-cooperative state courts.[2] The propriety of Minnesota's exercise of jurisdiction is not an issue on appeal; we accept Minnesota's prior exercise of jurisdiction as law of the case, particularly in light of the fact that appellant had removed the children to Louisiana under the false pretense of attending a wedding, and no emergency existed in the State of Louisiana. *See Dillon v. Medellin,* 409 So.2d 570, 575 (La.1982) (to warrant jurisdiction, emergency must exist in asylum state, not home state). In light of the unique circumstances presented here, however, we urge the Minnesota

trial court to consider whether, in the best interests of the children, it should continue to exercise UCCJA jurisdiction over this case.

Both Minnesota and Louisiana have adopted the UCCJA. *See* Minn.Stat. ch. 518A (1992); La.Rev.Stat.Ann. §§ 13:1700–13:1724 (1992). The general purpose of the UCCJA is to

> avoid jurisdictional competition and conflict with courts of other states in matters of child custody and to promote cooperation with the courts of other states so that a custody decree is rendered in the state which can best decide the case in the best interest of the child.

Minn.Stat. § 518A.01, subd. 1(a) (1992). To that end, the UCCJA sets out a system for the courts to determine which state would provide the most convenient forum to decide the case. Minn.Stat. § 518A.07, subd. 3 (1992).

■ Generally, under the UCCJA, the state which issued the decree (the "decree state") will maintain jurisdiction so long as the state remains the residence of the child or a parent or any contestant of the custody proceeding. *In re Marriage of Leyda,* 398 N.W.2d 815, 819 (Iowa 1987). A state may decline to exercise its jurisdiction, however, if, after considering the following factors, it determines that it is an inconvenient forum for a custody determination:

(a) if another state is or recently was the child's home state;

(b) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

(c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

---

2. We acknowledge that the United States Supreme Court has not read the Parental Kidnapping Prevention Act to create a cause of action in federal court to resolve two conflicting state custody decrees. *See Thompson v. Thompson,* 484 U.S. 174, 187, 108 S.Ct. 513, 520, 98 L.Ed.2d 512 (1988). As a basis for its decision, the Supreme Court relied on the fact that "[s]tate courts faithfully administer the Full Faith and Credit Clause every day." *Id.* This case, howev-

er, may present a case ripe for federal court due to the states' inability to give full faith and credit to either decree. Each state is obstinately protecting its own jurisdiction without communicating or cooperating to determine the best forum for the case. This situation may be what the Supreme Court envisioned when it said, "Should state courts prove as obstinate as petitioner predicts, Congress may choose to revisit the issue." *Id.*

(d) if the parties have agreed on another forum which is no less appropriate; and

(e) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 518A.01.

Minn.Stat. § 518A.07, subd. 3. Even a court with "home state" jurisdiction may be deemed an inconvenient forum and another state court deemed a more appropriate forum for custody determination. *See Mayer v. Mayer,* 91 Wis.2d 342, 283 N.W.2d 591, 598 (1979).

State courts have acknowledged that when children are absent from their "decree state" for an extended length of time it may be improper and inconvenient for the court to continue exercising jurisdiction under the UCCJA in that state. *See, e.g., Stowers v. Humphrey,* 576 So.2d 138, 142 (Miss.1991) (decree state stayed proceedings and deferred jurisdiction to Alabama on basis of convenience when children had lived in Alabama for two-and-a-half years and substantial evidence of their welfare existed there); *Gulla v. Fitzpatrick,* 408 Pa.Super. 269, 596 A.2d 851, 859 (1991) (Rhode Island was proper forum when child and mother had resided there for two years with no indication of returning to Pennsylvania); *see also Levinson v. Levinson,* 389 N.W.2d 761, 762 (Minn. App.1986) (Minnesota trial court properly declined to continue exercising jurisdiction over custody when children and parents had been living in Virgin Islands and Pennsylvania for over one year).

In those cases, the courts that had formerly assumed UCCJA jurisdiction relinquished it to another forum that would be more conducive to determining custody.

We urge the Minnesota trial court to evaluate its jurisdiction in this light and consider whether, over the last three years, Minnesota has become an inconvenient forum for custody determination. Appellant and the children have lived in Louisiana since May 1990; Louisiana is now their home. Appellant has an established family and community to which she and the children belong. Their life seems quite planted there. Three years is a substantial amount of time in the lives of these seven- and five-year-old boys. These facts may now support jurisdiction in Louisi-

ana for the best interests of the children. The UCCJA allows a state to exercise jurisdiction when:

(1) it appears that no court in another state would have jurisdiction * * * [as the child's home state, or because the state has significant connection with the child, or in an emergency situation] or a court of another state has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that a court of this state assume jurisdiction.

Minn.Stat. § 518A.03, subd. 1(d)(1) (1992); *see also* La.Rev.Stat.Ann. § 13:1702, subd. A(4) (1992) (Louisiana's equivalent provision). We note, for the record, that if the Minnesota trial court, upon reconsideration, abdicates future jurisdiction in favor of the Louisiana court, that decision shall not invalidate Minnesota's original exercise of jurisdiction over this case. On the contrary, that decision would represent the court's recognition and appreciation that the unique circumstances of this case require action for the sake and best interests of the children embroiled in this bitter dispute.

█ Finally, we encourage both Minnesota and Louisiana trial courts to adhere to the UCCJA's requirements of interstate communication and cooperation. The UCCJA requires two such courts that simultaneously exercise jurisdiction to communicate with each other to determine the best forum. Minn.Stat. § 518A.06, subd. 3 (1992). The drafters of the UCCJA commented:

Because of the havoc wreaked by simultaneous and competitive jurisdiction * * *, this section seeks to avoid jurisdictional conflict with all feasible means, including novel methods. Courts are expected to take an active part under this section in seeking out information about custody proceedings concerning the same child pending in other states. In a proper case jurisdiction is yielded to the other state either under this section or under section 7 [Minn.Stat. § 518A.07 "inconvenient forum"].

Uniform Child Custody Jurisdiction Act § 6 comment, 9 U.L.A. 220 (1988). In applying the UCCJA, state courts have consistently held that in order to foster cooperation, courts have a *duty* to communicate to resolve jurisdictional issues over child custody. *In re Marriage of Pedowitz*, 179 Cal.App. 3d 992, 1003, 225 Cal.Rptr. 186 (1986); *Hickey v. Baxter*, 461 So.2d 1364, 1367 (Fla.Dist.Ct. App.1984); *Vanneck v. Vanneck*, 68 A.D.2d 591, 417 N.Y.S.2d 258, 262 (1979), *aff'd* 49 N.Y.2d 602, 427 N.Y.S.2d 735, 404 N.E.2d 1278 (1980).

The record on appeal shows that the Minnesota district court sent a copy of the 1991 order assuming jurisdiction to the Louisiana court. The Louisiana court responded with two defensive letters: one to the trial court, one to counsel for respondent. We cannot deem these exchanges to satisfy the "communication" requirement under the UCCJA. Neither court has attempted to discuss with the other the determinative statutory factors regarding jurisdiction. *See* Minn.Stat. § 518A.03. On the contrary, in response to the 1992 Minnesota decree, the Louisiana court issued a judgment declaring:

> This court does not recognize the judgment of the Family Court Division of the Fourth Judicial District Court in and for Hennepin County * * * dated December 10, 1992.

The court then proceeded to enjoin respondent from violating the 1991 Louisiana decree, from "bothering or in any way interfering with" the parties' children, and from removing the children from Louisiana.

At present time, neither the parties, the attorneys, nor the state courts are cooperating to reach a resolution for the best interests of the children. Instead, we have the exact situation the UCCJA was enacted to prevent: two states and two parties at a jurisdictional impasse with two innocent children caught in the middle. "Which state exercises jurisdiction is less important than that the courts of the involved states act together in the children's best interests." *Coleman v. Coleman*, 493 N.W.2d 133, 137 (Minn.App.1992). On remand, we ask the courts of Minnesota and Louisiana to communicate, evaluate, and cooperate to deter-mine the most appropriate forum in which to decide the custody issue.

## DECISION

The jurisdiction issue is law of the case and not properly before this court. We reverse and remand for proper findings on the issues of child custody, child support and maintenance. We affirm the property division and reverse the award of attorney fees. On remand, we respectfully request the Minnesota trial court to re-evaluate (a) whether it is in the best interests of these children for Minnesota to continue to exercise jurisdiction over this case, and (b) whether the children's three-year absence from Minnesota renders this state an "inconvenient forum" for UCCJA jurisdiction.

**Affirmed in part, reversed in part, and remanded.**