*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0296**

In re the Marriage of:

Bridget Kathleen Corrigan, f/k/a Bridget Kathleen Schmidt, petitioner,
Respondent,

vs.

Daniel Thomas Schmidt,
Appellant.

**Filed January 17, 2017
Reversed and remanded
Reyes, Judge**

Ramsey County District Court
File No. 62-FA-11-221

Carrie A. Doom, McKinnis & Doom, P.A., Cambridge, Minnesota (for respondent)

Christopher Zewiske, Ormond & Zewiske, Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Reyes, Judge; and T. Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant challenges the district court's order granting respondent's motion to enroll the parties' children at Hanover Elementary School instead of the school they had been attending, St. John's School of Little Canada (St. John's), asserting that the district

court abused its discretion by failing to make detailed findings and explanations regarding each of the best-interests factors as required by Minn. Stat. § 518.17 (2016). Appellant also argues that the district court erred in concluding that he waived the right to enforce a provision of a stipulated parenting plan in which respondent agreed to move closer to appellant's residence (the locale restriction). Because the district court erred in concluding that appellant waived the locale-restriction issue, did not make detailed findings and explanations regarding the best-interests factors, and failed to consider certain relevant factors, we reverse and remand.

**FACTS**

Appellant-father Daniel Thomas Schmidt and respondent-mother Bridget Kathleen Corrigan dissolved their marriage by a stipulated judgment and decree in 2011. The parties stipulated to a parenting plan under Minn. Stat. § 518.1751 (2016) that gave them joint legal and joint physical custody of their three minor children. The parenting plan contains a locale restriction stating that Corrigan "will move to within approximately 10 miles of [Schmidt's] residence after the 2011-2012 school year" and before the start of the 2012-2013 school year. The stated goal of the locale restriction is "to allow [] each parent to reduce the travel time and distance between the parties, thereby allowing both parties to enjoy their parenting time unfettered by the distance between St. Paul and Plymouth." The parenting plan designates a school for 2011-2012 and states that for future years, the parties "will discuss the issue of the children's school," taking into consideration Corrigan's new residence and the costs and benefits of "any and all schools that are located in a reasonable distance to the residences of the parties." The parties

2

agreed to "consider any school that [Corrigan] may be teaching at in the Twin Cities area." The parenting plan states that if the parties cannot agree on a school, the children will attend St. Rose of Lima Catholic School (St. Rose) in Roseville.

The parenting plan identifies a parenting consultant who will "try to facilitate a resolution with the parties," or if a resolution is not possible, "decide the issue and advise the parents of the decision" pursuant to Minn. R. Gen. Pract. 114.02(a)(10). The parenting plan gives the parenting consultant authority to "[d]ecide school attendance." Under the parenting plan, the parenting consultant's decisions are "binding on the parties until otherwise ordered by the [c]ourt" and are reviewed by the district court de novo.

Despite the locale restriction in the parenting plan, Corrigan did not move. In 2012, Corrigan began teaching at St. John's, which is within five miles of Schmidt's residence. The parties agreed that all three children would attend school at St. John's, which they did. Schmidt did not object to Corrigan's failure to move immediately after the 2011-2012 school year, but he sought enforcement of the locale restriction by the parenting consultant in May 2013. The parenting consultant did not reach a decision because her contract expired while the decision was pending and the parties did not renew it.

Corrigan accepted a teaching position at a school in Buffalo, Minnesota, for the 2015-2016 school year. She left her job at St. John's and disenrolled the children from that school without Schmidt's knowledge. Schmidt discovered this and re-enrolled the children at St. John's. Corrigan wanted the children to attend Hanover Elementary, which is within the same school district as Corrigan's new school. Hanover Elementary

3

is approximately 20 miles west of Corrigan's Plymouth residence, 41 miles west of Schmidt's St. Paul residence, and 77 miles west of Schmidt's workplace in Hudson, Wisconsin. Schmidt wanted the children to remain at St. John's, which is approximately 5 miles from Schmidt's residence and 28 miles east of Corrigan's residence.

On July 7, 2015, Schmidt moved the district court for an order enforcing the locale restriction and directing the parties to enroll the children at either St. John's or St. Rose. Corrigan moved the district court to deny Schmidt's motion and moved for an order that the children attend Hanover Elementary. At a hearing on July 21, the parties agreed to work with the parenting consultant to resolve these issues.

On the parenting consultant's recommendation, the parties hired an educational consultant to analyze the proposed schools' fitness for the children based on many factors. Although more factors favored Hanover Elementary than St. John's, the educational consultant was "not compelled that the likely educational benefits . . . that would eventually accrue to the children [from attending Hanover] would sufficiently counterbalance the potential stress and disruption that a sudden relocation to Buffalo, Minnesota might bring." The educational consultant recommended that the children attend St. John's until the oldest child is ready to transition to middle school, at which time all of the children should transfer to Buffalo schools or "other strong public, private or parochial school setting that is equidistant" to the parties' residences.

The parenting consultant agreed with the educational consultant and decided that the children should attend St. John's for 2015-2016, but "anticipate[d] that the parents will seek to review this issue within the next two years, at which time the

recommendation will likely be for the girls to transition to a new school/district." The parenting consultant noted that the parties "have expressed the goal of enrolling the girls in a school within a community where they both live," and that this goal "involves reconsideration of their residences and a new look at schools and school districts."

In October, Schmidt moved the district court for an order enforcing the decision of the parenting consultant. Corrigan moved for an order that the children attend Hanover Elementary. At the October 29 hearing, the district court asked the parties questions, but there was no opportunity for direct or cross-examination by counsel. Schmidt raised the issue of the locale restriction at the hearing, but the district court concluded that Schmidt had waived his right to enforce it. The district court granted Corrigan's motion, ruling that the children should attend Hanover Elementary starting the next semester, in December 2015.

Schmidt appeals.

## D E C I S I O N

### I.    Waiver of the Locale Restriction

Schmidt argues that the district court erred in concluding that he waived the right to seek enforcement of the locale restriction in the parenting plan. We agree.

We review de novo the legal question of whether Schmidt's failure to request enforcement of the locale restriction in 2012 or in his motion after the parenting consultant's September 2015 decision resulted in a waiver of his right to enforce that restriction. *See Haefele v. Haefele*, 621 N.W.2d 758, 761 (Minn. App. 2001), *review denied* (Minn. Feb. 21, 2001) ("This court reviews purely legal issues . . . de novo.").

5

In concluding that Schmidt waived the locale-restriction issue, the district court reasoned that Schmidt "knew he could enforce that residency requirement after the 2011-2012 school year, but declined to do so." The district court did note that Schmidt sought to enforce the locale restriction in his July 2015 motion "but did not highlight this part of his requested relief after the parenting consultant's decision" in his October 2015 motion.

We conclude that Schmidt did not waive his right to enforce the locale restriction for two reasons. First, the record does not support the conclusion that Schmidt waived the locale-restriction issue. The district court found that Schmidt contacted the parenting consultant to address Corrigan's failure to move in May 2013. The record indicates that the only reason the parenting consultant did not reach a decision on the locale restriction in 2013 is because her contract expired before a decision was made. After Corrigan quit working at St. John's and removed the children from enrollment at St. John's without Schmidt's approval, Schmidt moved the district court to enforce the locale restriction and to make a decision about school choice. The locale-restriction issue was not resolved at the July 21 hearing because the district court recommended that the parties seek a decision from the parenting consultant instead. The parenting consultant did not reach the locale-restriction issue, but decided that the children should attend St. John's for at least the upcoming school year. When Schmidt moved the district court to enforce the parenting consultant's school decision in October 2015, he did not reassert his request for enforcement of the locale restriction because the parenting consultant's decision kept the children at Schmidt's preferred school. However, he had twice sought to enforce the

6

locale restriction. On these facts, it was erroneous for the district court to conclude that Schmidt waived his right to enforce the locale restriction.

Second, neither the district court nor Corrigan cites to any binding caselaw supporting the position that a party waives his right to seek enforcement of a stipulated provision by not seeking district court enforcement immediately after the provision became enforceable or by not asserting it in every motion related to any parenting dispute. To hold as such would create the unfavorable practical result of encouraging parties to litigate every issue in their stipulated agreements as soon as possible rather than trying to resolve problems cooperatively outside of court. Because no binding caselaw supports the position the district court took here, and because taking such a position would lead to undesirable results, we do not adopt that position now. Therefore, we reverse the district court's granting of Corrigan's motion to change schools because it relies on the erroneous conclusion that Schmidt waived his right to enforce the locale restriction.

## II.     Analysis of the Best-Interests Factors

Schmidt asserts that the district court abused its discretion in failing to make detailed findings on each of the best-interests factors set out in Minn. Stat. § 518.17, subd. 1(a), and failing to explain how each factor led to its conclusions and determination as required by section 518.17, subdivision 1(b)(1). We agree.

Disputes related to custody and parenting-time issues must be resolved according to the best interests of the children. *Novak v. Novak*, 446 N.W.2d 422, 424 (Minn. App. 1989), *review denied* (Minn. Dec. 1, 1989). "In evaluating the best interests of the

7

child[ren] . . . , the court must consider and evaluate all relevant factors, including" 12 specific factors set out in the statute. Minn. Stat. § 518.17, subd. 1(a). The statute requires the district court to "make detailed findings on each of the factors in paragraph (a) based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody and parenting time." *Id.*, subd. 1(b)(1).

The standard of review on appeal from a district court's custody-related determination is whether the district court "abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (quotation omitted). Effective appellate review of a district court's exercise of its discretion "is possible only when the [district] court has issued sufficiently detailed findings of fact to demonstrate its consideration" of all relevant factors. *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989). Therefore, a district court's failure to make detailed findings on relevant statutory factors generally requires a remand. *Id.*

### A. Formal Requirements

As an initial matter, Corrigan argues that the district court did not need to make detailed findings on each statutory best-interests factor and explain how each factor led to its conclusions. We disagree. Corrigan cites to *Nazar v. Nazar*, in which this court stated that "[w]hile the [district] court must consider all [statutory] factors that pertain to the best interests of the children, the court need not make a specific finding on each and every one." *Nazar v. Nazar*, 505 N.W.2d 628, 633 (Minn. App. 1993), *review denied*

8

(Minn. Oct. 28, 1993), *superseded by statute on other grounds*, Minn. Stat. § 518A.28(d) (2014).

Nazar was interpreting the 1992 version of section 518.17, which, like the current statute, provided that "[t]he court must make detailed findings on each of the factors and explain how the factors led to its conclusions and to the determination of the best interests of the child." Minn. Stat. § 518.17, subd. 1(a) (1992). *Nazar* cited *Schultz v. Schultz* as authority for the rule that a court need not make specific findings on each factor. *Nazar*, 505 N.W.2d at 633 (citing *Schultz v. Schultz*, 358 N.W.2d 136, 138 (Minn. App. 1984)). But *Schultz* was interpreting an earlier version of section 518.17 that did not contain language requiring the district court to make detailed findings on each factor. *Schultz*, 358 N.W.2d at 138; c*ompare* Minn. Stat. § 518.17, subd. 1 (1982), *with id.*, subd. 1(a) (1992), *and id.*, subd. 1(b)(1) (2016). The *Nazar* court's citation of the *Schultz* rule was questionable because it was inconsistent with the then-existing 1992 version of the statute.

We conclude that the *Schultz* rule—that failure to discuss each statutory best-interests factor is not an abuse of discretion—has been superseded by the current version of Minn. Stat. § 518.17, which requires the district court to "make detailed findings on each of the factors in paragraph (a) based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody and parenting time." Minn. Stat. § 518.17, subd. 1(b)(1) (2016); *see Geske v. Marcolina*, 624 N.W.2d 813, 817 n.2 (Minn. App. 2001) (concluding that cases decided under a prior version of a statute

"have been, to the extent they are inconsistent with the amended statute, superseded by the amended statute").

**B.      Adequacy of the District Court's Best-Interests Analysis**

Schmidt argues that the district court did not fulfill its statutory obligation to make detailed findings on each best-interests factor and explain how each factor led to its conclusions and determination. We agree.

The district court generally referred to the best interests of the children as being the overarching standard throughout its findings and ultimate determination. It also made some factual findings that appear relevant to some of the best-interests factors. But it did not make detailed findings on each of the best-interests factors and did not explain how each best-interests factor led to its conclusions and ultimate determination.

Failure to make such findings obscures the district court's reasoning and impairs our ability to correct errors. The district court's failure to make adequate findings of fact under Minn. Stat. § 518.17 is an error of law, resulting in an abuse of discretion regarding the questions of custody and parenting time presented to the district court for decision. For this reason, a reversal of the order and a remand so the district court can make appropriate findings and explanations is required.

**III.   Factors Not Sufficiently Considered**

Schmidt argues that the district court abused its discretion by failing to consider and evaluate all relevant factors in evaluating the best interests of the children, as required by Minn. Stat. § 518.17, subd. 1(a). We agree, and also note that legal errors

10

prevented the district court from considering certain relevant factors, amounting to an abuse of discretion. *Sefkow*, 427 N.W.2d at 210.

Specifically, because the district court erroneously concluded that Schmidt waived his right to enforce the locale restriction, it did not sufficiently consider how Corrigan's choice to disregard the locale restriction affects the best-interests factors. It does not appear that the district court considered the impact the increased distance between the children's school and Schmidt's residence and workplace would have on Schmidt's ongoing relationships with the children, particularly with respect to Schmidt's ability to attend school functions. Minn. Stat. § 518.17, subd. 1(a)(9). Furthermore, the district court did not analyze whether making Corrigan solely responsible for transporting the children between Hanover Elementary and Schmidt's residence realistically would impact the relative parenting-time arrangement by increasing the children's time with Corrigan at the expense of their time with Schmidt. *Id.*, subd. 1(a)(10).

We acknowledge that some of the statutory factors may not be material to the particular issues presented here. But if that is the case, the district court must at least identify those specific immaterial factors and state its finding that each does not affect its decision. *Id.*, subd. 1(b)(1).

Because the district court abused its discretion by failing to consider and evaluate all relevant factors and failing to make detailed findings on each factor and explain how each factor led to its conclusions, we reverse the district court's order granting Corrigan's motion to change schools. We remand to the district court so it can fully review all facts,

11

make detailed findings on each best-interests factor, and explain how each factor led to its conclusions and ultimate determination in accordance with this decision.

**Reversed and remanded.**